**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

Civil Case No.: _____

JOHN DOE,

    Plaintiff,

           v.

GEORGE MASON UNIVERSITY, THE RECTOR
AND BOARD OF VISITORS OF GEORGE MASON
UNIVERSITY, JENNIFER HAMMAT, in her official
and individual capacities, JULIAN WILLIAMS, in his
official and individual capacities, KEITH RENSHAW,
in his official and individual capacities, ANN L. ARDIS,
in her official and individual capacities, and S. DAVID WU,
in his official and individual capacities.

    Defendants.

**PLAINTIFF'S MOTION
TO PROCEED BY PSEUDONYM
AND FOR LEAVE TO FILE A PROPOSED PROTECTIVE ORDER**

Plaintiff John Doe, ("Plaintiff") by his attorneys, Farmer Legal, PLLC and Nesenoff & Miltenberg, LLP, hereby seeks authorization to file the Complaint in the above-captioned matter as a pseudonymous Plaintiff and to have his identity protected in all public filings with the Court, including any dispositive motions. Should the Court grant Plaintiff's motion, Plaintiff also seeks leave to file a proposed protective order after conferring with Defendants on the proposed terms.

In light of the serious nature of the allegations contained in the Complaint, Plaintiff is justifiably concerned about the possibility of acts of reprisal and the impact that disclosing his identity could have on his career, his employment as a tenured professor at George Mason University ("GMU"), and his reputation—the exact type of harm which Plaintiff seeks to remedy in this action.

Plaintiff is prepared to provide a statement of his true identity under seal, upon the Court's request.

## STATEMENT OF FACTS

Plaintiff has long been held in the highest esteem by students and colleagues alike, has achieved the highest levels of success in his field and received numerous awards and accolades over the course of his career. Compl. ¶ 2. Plaintiff, who has taught at GMU for over 15 years, held his tenured position without incident until December 2018 when he was notified of years-old, false allegations of sexual harassment reported against him by a graduate student whom he had recently fired from his lab, and her three friends, two of whom had already graduated from GMU at the time their reports were made. Compl. ¶ 3.

The complaints—some of which dated back to 2013—primarily concerned topics Plaintiff discussed in his classes and comments made by Plaintiff in the course of class discussion or, on occasion, outside of the classroom but pertaining to topics he taught and scientifically researched at the University. Compl. ¶¶ 252-273, 288-289, 292, 304-305, 336-340, 342, and 353. The remaining allegations were disproven by witness statements that supported Plaintiff's account of various events, or evidence submitted by Plaintiff which contradicted the allegations, including evidence that the complainants neither suffered harm as a result of the alleged misconduct nor had been denied access to their educations in any way. Compl. at Pt. VI.

On the contrary, at each complainant's request, Plaintiff provided assistance with writing and consulting opportunities, provided recommendations for job opportunities and grants, and, in one case, Plaintiff sat on the complainant's dissertation committee. Compl. ¶ 5. Understandably, Plaintiff was surprised to learn that the same women who had given him unsolicited praise for his

teaching and research, and sought him out for assistance with academics and their careers, now alleged that he had created a "hostile environment." Compl. ¶ 5, Pt. VII.

The Defendants did not question that these women were all friends (Complainants 3 and 4 were roommates) or that they had waited years to complain. Compl. ¶ 5. None of the Defendants questioned the motives of the graduate student, Complainant 4, who had been fired for poor performance. *Id.* Instead, Defendants pursued a baseless investigation of allegations that were timed out under the applicable GMU policies and procedures, ignored that the majority of the allegations concerned protected academic discourse, and deprived Plaintiff of even the most minimal due process protections including notice, cross-examination and the right to review the evidence against him. Compl., Pts. V and VII. No hearing was held. No faculty involved. The Title IX Coordinator determined the outcome of the case even though Plaintiff faced termination as a potential sanction. Her supervisor singularly decided Plaintiff's appeal. That decision was final. Compl. ¶ 7.

During the time in which Plaintiff's case was investigated and decided, GMU was already facing public pressure due to two civil rights investigations concerning its failure to adequately respond to the complaints of female students, an exposé in The Washington Post and The Atlantic about a professor who made sexual advances toward a number of his students over a span of years, and student outcry over the University's decision to hire Brett Kavanaugh. Compl. ¶¶ 98-135.

The Title IX staff assigned to Plaintiff's case were biased against Plaintiff. They have backgrounds in advocacy for women's rights, and have made public statements indicating a potential for bias against male respondents. Compl. ¶¶ 147-152, 165-166. Certain statements made by Defendants Hammat and Williams in correspondence to Plaintiff suggested that they employed

stereotypical views of males and females in their decision-making process when evaluating Plaintiff's case. Compl. ¶ 485.

The Title IX investigator assigned to Plaintiff's case was removed from the case due to bias. Compl. ¶ 9. This occurred *after* the investigator conducted the complainant interviews and, upon information and belief, interviewed the majority of witnesses in the case. Compl. ¶ 9. Neither Defendant Hammat nor Defendant Williams considered that the evidence gathered by the Title IX investigator was tainted due to her bias against Plaintiff. Compl. ¶ 9.

Defendant Hammat erroneously found Plaintiff responsible for sexual and gender-based harassment, adding new allegations and charges to the letters conveying her findings to Plaintiff. Compl. ¶ 164. Plaintiff had no opportunity to respond to the added allegations and charges during the investigation. Further, the evidence did not support Defendant Hammat's findings. Compl., Pt. VII.

Defendant Williams denied Plaintiff's appeal, in part finding that Plaintiff had provided no new evidence in support of his appeal. Compl. ¶¶ 372-381. In fact, Plaintiff provided new evidence that utterly refuted a number of the complainants' allegations. *Id.* He also pointed to a number of procedural errors—including a lack of due process in the proceedings and bias on the part of Defendant Hammat—that warranted reversal of the findings. Compl. *Id.*

As a result of the findings, Defendant Renshaw, Plaintiff's supervisor, imposed severe restrictions on Plaintiff's contact with graduate students, including teaching and research positions for an indefinite period of time because the lifting of said restrictions is left to Renshaw's discretion. Compl. ¶¶ 394-399.

Defendants publicly released information about Plaintiff's case to faculty members in Plaintiff's program, even before any outcome had been determined, causing rumors to spread and

harming his reputation. Defendants also released confidential Title IX documents to the faculty in Plaintiff's program without his knowledge, resulting in the sharing of this information with graduate students, who were then discouraged from working with Plaintiff. Compl. ¶¶ 503-510. The faculty then filed a grievance against Plaintiff which resulted in Defendant Renshaw disaffiliating Plaintiff from his program. Compl. ¶¶ 412-459.

Plaintiff was heavily pressured to discuss the case at a faculty meeting even though he had made clear to his supervisor that he had no intention of discussing the case. The meeting was with the same individuals who had filed the grievance against him. Compl. ¶14. While he did not provide the details of the case that were repeatedly demanded by the faculty (the majority of whom were female) at that meeting, he did sit through an attack on his character, speculation and surmise about what had happened, and statements to the effect that his colleagues had little concern about what harm may occur to his reputation. Compl. ¶¶ 432-436.

As a result of Defendants' misconduct in violating the University's own policies and failing to provide Plaintiff with a fundamentally fair process, Plaintiff has, among other things, suffered irreparable harm to his career and reputation. Several faculty members explicitly mentioned in the meeting that the Plaintiff's reputation has already been ruined. Compl. ¶ 435.

Plaintiff alleges claims against Defendants for: violations of Title IX of the Education Amendments of 1972; violation of Plaintiff's right to procedural due process under the Fourteenth Amendment of the United States Constitution; violation of the due process clause of the Constitution of the Commonwealth of Virginia; and violation of Plaintiff's right to free speech under the First Amendment of the United States Constitution.

**ARGUMENT**

Many federal courts have permitted parties to proceed anonymously when special circumstances arise. Privacy or confidentiality concerns are sometimes "sufficiently critical that parties or witnesses should be allowed this rare dispensation." *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993). In determining whether to permit a party to proceed anonymously, a court has a "duty to inquire into the circumstances of particular cases to determine whether the dispensation is warranted." *Id.*

A list of non-exclusive factors that courts consider in determining whether a litigant can proceed anonymously include: i) whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend litigation or is to preserve privacy in a matter of a sensitive and highly personal nature; ii) whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties; iii) whether the action is against a governmental or private party; and iv) the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously. *See Doe v. The Rector and Visitors of George Mason University*, 179 F. Supp. 3d 583, 592-593 (E.D. Va. 2016) (citing *James*, 6 F.3d at 238). *See also Doe v. Alger,* 317 F.R.D. 37, 42 (W.D. Va. 2016) (recognizing another factor, risk of "irreparable harm to Plaintiff's name," which weighed in favor of allowing the plaintiff to proceed by pseudonym)

As outlined below, a balancing of these factors weights in favor of allowing Plaintiff to proceed anonymously in this litigation.

    A. **This Action Involves Matters of a Highly Sensitive Nature**

As set forth in the Complaint, Plaintiff, has been falsely accused, and erroneously found responsible for, sexual misconduct in the form of sexual and gender-based harassment, with

respect to four former graduate students, and friends, Complainants 1-4. This Court has previously held that litigation concerning accusations of sexual misconduct undoubtedly involves highly sensitive matters because such accusations can "invite harassment and ridicule." *The Rector and Visitors of George Mason University*, 179 F. Supp. 3d at 593 ("'[C]ommon sense suffices to understand that an adjudication of responsibility for sexual misconduct carries a much more powerful stigma than an adjudication of run-of-the-mill assault or vandalism.'") (alteration in original and citation omitted).

### B. There Is A Risk of Harm to Plaintiff

Plaintiff should be permitted to proceed anonymously in this matter as the revelation of his identify would result in significant harm to Plaintiff, the exact type which he seeks to remedy by the commencement of this lawsuit. *See Doe v. Univ. of St. Thomas*, 2016 WL 9307609, at *2 ("Even if his lawsuit were successful and his claims of unfair treatment were vindicated down the road…the complained of damage to Mr. Doe's reputation would be perhaps unfixable if his identity is known"); *Doe v. Colgate Univ.,* 2016 WL 1448829 at *3 (N.D.N.Y. April 12, 2016) ("Should Plaintiff prevail in proving that the charges against him were unfounded and the procedures Defendants followed in their investigation were unfair, forcing Plaintiff to reveal his identity would further exacerbate the emotional and reputational injuries he alleges.") Accordingly, forcing Plaintiff to reveal his identity would not further any aspect of the litigation and "instead poses a risk that Plaintiff would be subject to unnecessary ridicule and attention." *Doe v. Colgate Univ.,* 2016 WL 1448829, at *3. *See The Rector and Visitors of George Mason Univ.*, 179 F. Supp. 3d at 593.

### C. Plaintiff's Privacy Interests Outweigh the Public's Interest

While there is a "heightened public interest" in this case because GMU is a government entity and the individual defendants are government officials who have been sued, in part, in their official capacities, Plaintiff's interest in maintaining his anonymity outweighs the public's interest in this matter because the "nature of the accusations against Plaintiff are sufficiently severe that they rise to the level of 'extraordinary circumstances' in support of the use of a pseudonym." *See The Rector and Visitors of George Mason University*, 179 F. Supp. 3d at 594. Indeed, the public disclosure of Plaintiff's identity will impact his present employment, present and future career opportunities, and subject Plaintiff to a significant risk of retaliation, ridicule, and reputational harm.

In contrast, the use of a pseudonym is an "appropriately tailored means of protecting Plaintiff's identity without unreasonably restricting public access to the litigation materials"—the public will have access to the information contained within court filings (*e.g.* the Complaint) with the exception of Plaintiff's identity and the identities of Complainants 1-4, Student 1 and Professor 1. *Id.*

### D. There is No Risk of Unfairness to Defendants

Plaintiff should also be permitted to proceed anonymously because Defendants will not be prejudiced in any way by proceeding against an anonymous party. Defendants are already aware of Plaintiff's identity. Thus, there is no doubt that Defendants will have an unobstructed opportunity to conduct discovery, present their defenses and litigate this matter, regardless of whether Plaintiff identifies himself or proceeds anonymously. *The Rector and Visitors of George Mason University*, 179 F. Supp. 3d at 594. Accordingly, Plaintiff should be permitted to proceed

anonymously in this action as revealing his name will cause significant prejudice to Plaintiff, while proceeding anonymously will not hinder Defendants in any way.

Based on the foregoing, in consideration of the balancing of relevant factors, the Court should allow Plaintiff to employ a pseudonym in this matter. The interests of Defendants will not be harmed at this early stage of the case if Plaintiff's name is not revealed. Plaintiff and his attorneys are prepared to address measures to protect the confidentiality of his identity should the Court require disclosure to the public at a later stage in the proceedings.

### E. Entry of a Protective Order is Necessary to Protect Plaintiff's Identity

Should the Court grant Plaintiff's motion, and permit him to proceed by pseudonym, the entry of a protective order will be necessary to protect the disclosure of Plaintiff's identity during the course of discovery and in submissions to the Court which may become part of the public record. For this reason, Plaintiff requests leave to file a proposed protective order with the Court upon the issuance of a decision on this motion in Plaintiff's favor. Plaintiff is, further, amenable to conferring with Defendants prior to submission of the proposed protective order to determine if the parties can agree to the proposed terms.

## **CONCLUSION**

For these reasons and such other reasons as may appear just to the Court, Plaintiff John Doe requests that his Motion to Proceed Under Pseudonym and for Leave to File A Proposed Protective Order be granted in its entirety.

Dated: September 25, 2019

        Respectfully Submitted,

        FARMER LEGAL, PLLC

        By: /s/ *Joshua T. Farmer*
            Joshua T. Farmer
        5030 Sadler Place, #205
        Glen Allen, VA 23060
        (804)325-1441
        josh@farmerlegalhelp.com

        -and-

        NESENOFF & MILTENBERG, LLP

        By: /s/ *Andrew T. Miltenberg*
            Andrew T. Miltenberg (*pro hac vice*
            admission pending)
        Kara L. Gorycki (*pro hac vice* admission pending)
        363 Seventh Avenue, Fifth Floor
        New York, New York 10001
        (212) 736-4500
        amiltenberg@nmllplaw.com
        kgorycki@nmllplaw.com

        *Attorneys for Plaintiff John Doe*