**EXHIBIT 2**

# U.S. Department of Education

 Print ✖ Close Window

# First Amendment: Dear Colleague

UNITED STATES DEPARTMENT OF EDUCATION
OFFICE FOR CIVIL RIGHTS
400 MARYLAND AVE., S.W.
WASHINGTON, D.C. 20202-1100

**THE ASSISTANT SECRETARY**

July 28, 2003

Dear Colleague:

I am writing to confirm the position of the Office for Civil Rights (OCR) of the U.S. Department of Education regarding a subject which is of central importance to our government, our heritage of freedom, and our way of life: the First Amendment of the U.S. Constitution.

OCR has received inquiries regarding whether OCR's regulations are intended to restrict speech activities that are protected under the First Amendment. I want to assure you in the clearest possible terms that OCR's regulations are not intended to restrict the exercise of any expressive activities protected under the U.S. Constitution. OCR has consistently maintained that the statutes that it enforces are intended to protect students from invidious discrimination, not to regulate the content of speech. Harassment of students, which can include verbal or physical conduct, can be a form of discrimination prohibited by the statutes enforced by OCR. Thus, for example, in addressing harassment allegations, OCR has recognized that the offensiveness of a particular expression, standing alone, is not a legally sufficient basis to establish a hostile environment under the statutes enforced by OCR. In order to establish a hostile environment, harassment must be sufficiently serious (i.e., severe, persistent or pervasive) as to limit or deny a student's ability to participate in or benefit from an educational program. OCR has consistently maintained that schools in regulating the conduct of students and faculty to prevent or redress discrimination must formulate, interpret, and apply their rules in a manner that respects the legal rights of students and faculty, including those court precedents interpreting the concept of free speech. OCR's regulations and policies do not require or prescribe speech, conduct or harassment codes that impair the exercise of rights protected under the First Amendment.

As you know, OCR enforces several statutes that prohibit discrimination on the basis of sex, race or other prohibited classifications in federally funded educational programs and activities. These prohibitions include racial, disability and sexual harassment of students. Let me emphasize that OCR is committed to the full, fair and effective enforcement of these statutes consistent with the requirements of the First Amendment. Only by eliminating these forms of discrimination can we fully ensure that every student receives an equal opportunity to achieve academic excellence.

Some colleges and universities have interpreted OCR's prohibition of "harassment" as encompassing all offensive speech regarding sex, disability, race or other classifications. Harassment, however, to be prohibited by the statutes within OCR's jurisdiction, must include something beyond the mere expression of views, words, symbols or thoughts that some person finds offensive. Under OCR's standard, the conduct must also be considered sufficiently serious to deny or limit a student's ability to participate in or benefit from the educational program. Thus, OCR's standards require that the conduct be evaluated from the perspective of a reasonable person in the alleged victim's position, considering all the circumstances, including the alleged victim's age.

There has been some confusion arising from the fact that OCR's regulations are enforced against private institutions that receive federal-funds. Because the First Amendment normally does not bind private institutions, some have erroneously assumed that OCR's regulations apply to private federal-funds recipients without the constitutional limitations imposed on public institutions. OCR's regulations should not be interpreted in ways that would lead to the suppression of protected speech on public or private campuses. Any private post-secondary institution that chooses to limit free speech in ways that are more restrictive than at public educational institutions does so on its own accord and not based on requirements imposed by OCR.

In summary, OCR interprets its regulations consistent with the requirements of the First Amendment, and all actions taken by OCR must comport with First Amendment principles. No OCR regulation should be interpreted to impinge upon rights protected under the First Amendment to the U.S. Constitution or to require recipients to enact or enforce codes that punish the exercise of such rights. There is no conflict between the civil rights laws that this Office enforces and the civil liberties guaranteed by the First Amendment. With these principles in mind, we can, consistent with the requirements of the First Amendment, ensure a safe and nondiscriminatory environment for students that is conducive to learning and protects both the constitutional and civil rights of all students.

Sincerely,

Gerald A. Reynolds
Assistant Secretary
Office for Civil Rights
Department of Education

Top

Print

Close Window

Last Modified: 09/25/2018