**EXHIBIT 22**

ABOUT / ADVERTISING / CONTACT / GET INVOLVED / OPINION SECTION SUBMISSIONS



NEWS / CULTURE / OPINION / SPORTS / THE VOICE OF GMU KOREA / ETC. / FIND YOUR COPY /



## A Title IX report alleged harassment by Student Body President

APRIL 29, 2018   /   0 COMMENTS   /   1716 VIEWS

Facebook 685    Twitter    LinkedIn    Email

By Lauren Sullivan, Staff Writer; Fareeha Rehman, Co-editor-in-chief; Michael Eberhart, News Editor

Editor's note: headline has been updated to more accurately reflect new information brought to Fourth Estate after the original article was published. Further updates have been added throughout the body of the article. The full corrections request can be viewed here.

We would also like to clarify that a report does not equate to an investigation. As mentioned more than once in the article, there is no formal Title IX investigation against David Kanos. According to Julian Williams, VP of CDE, "there have not been any active or closed investigations involving Mr. Kanos by the Title IX office." The CDE office did not provide explicit definitions of a report and an investigation.

*Brenda is a pseudonym used to protect the student's identity.

When Brenda* heard that David Kanos was running for Mason student body president, she was instantly alarmed.

Before they both came to Mason for their freshman year, Kanos had repeatedly messaged Brenda via Facebook in May 2014, sending suggestive and inappropriate questions asking about her virginity and making unwanted sexual advances. Brenda stopped responding and blocked him on Facebook.

"I responded to his inappropriate messages as a naive freshman and didn't realize the magnitude of [the messages] until my mom intervened," she wrote in a message to Fourth Estate.

Later that month, Kanos also contacted Brenda's mother on Facebook, describing her as "really pretty," and asking about Brenda's father and their divorce.

"It is not appropriate to ask a mother about her personal life, and it is not appropriate to message Brenda about sexual things like you have done," Brenda's mother wrote in a response to Kanos on May 30, 2014 before also





blocking him on Facebook.

Facebook posts obtained by Fourth Estate from February 2015 show multiple other women sent comments to Brenda about receiving inappropriate and suggestive messages from Kanos through text messages and social media until they also blocked him.

"He would use my name to message them as an icebreaker and he would say disgusting stuff," said Brenda, speaking in an interview with Fourth Estate.

Kanos declined multiple requests for interview or comment for this story.

## INCIDENT IN ROOSEVELT HALL

In August 2014, Brenda moved onto an all-girls floor in the Roosevelt residence hall.

"It was very uncommon for guys to be on our floor," said Brenda.

But according to Brenda, Kanos, who lived on the floor above, confronted her one night early in the spring 2015 semester as she was returning from the communal bathroom wearing only a towel.

"He proceeded to corner me in the hallway and tried to force conversation upon me," said Brenda, "and eventually after 2-3 minutes of this I said 'I need to go back to my room and change.'"

She was finally able to get to her room, but the incident was not over when she reached the door.

"He tried to push the door open and force his way in," said Brenda. "I kept saying, 'I need to change' and he would say 'oh, I know' and was still trying to get in. But I eventually was able to close the door on him."

According to Brenda, the harassment did not end after that incident. Speaking to Fourth Estate, she described other instances of leaving her dorm room door unlocked to quickly go to the bathroom, only to return and find Kanos in her room, uninvited — even laying on her bed.

Based on the Facebook messages from the previous year and other contact with Kanos in 2015, Brenda decided to tell her resident advisor about him the day after the hallway incident.

## REPORTING TO THE RA

According to Mason's Title IX Policy 1202: Sexual Harassment and Misconduct, "A Responsible Employee is required to report to the University's Title IX Coordinator all relevant details (obtained directly or indirectly) about an incident of Prohibited Conduct that involves any Student as a Complainant, Respondent, and/or witness, including dates, times, locations, and names of parties and witnesses."

As defined by Policy 1202, "Responsible Employees include Resident Assistants, Graduate Teaching Assistants, and all other student-employees, when disclosures are made to any of them in their capacities as employees."

But according to Brenda, there was no follow-up to her from the Title IX office based on her verbal report to her RA. Fourth Estate reached out to the RA for comment but did not receive a response.

"The university cannot discuss individual Title IX complaints that involve students, as they are considered educational records," wrote Julian Williams, Mason's vice president of Compliance, Diversity and Ethics (CDE), in an email to Fourth Estate. CDE oversees the Title IX office at Mason. Student's records are protected by federal law according to the Family Educational Rights and Privacy Act of 1974 (FERPA).

After reporting to her RA and not receiving any follow up from the Title IX office, Brenda decided to avoid Kanos and leave the incidents behind her.

Update: Housing and Residence Life confirmed that no incident report was submitted for the Complainant and the Respondent in the fall of 2015, according to Williams.

## THE CAMPAIGN

When Brenda found out Kanos was running for student body president in March 2017, she decided to share her experiences with the public.

"My main concern going forward was that I would have to be friendly with him in a work capacity, and I didn't think I could do that," said Brenda, who was then an intern in a University office in a position that worked closely with student body president.

However, the situation was complicated by her friendship with Kelley Dugan, Kanos' running mate for vice president.

"I was in a really tough situation because I didn't want to ruin her own personal success," said Brenda.



**Mason improves to 9-1 in a lackluster performance ...**
DECEMBER 5, 2019



**Women's Basketball Falls to 4-5 in Wednesday Matin...**
DECEMBER 4, 2019

### FOURTH ESTATE WEEKLY

Shelf by Issuu

### FOLLOW IVE ON SOCIAL MEDIA

In texts obtained by Fourth Estate, Dugan texted Brenda about running on the same ticket as Kanos shortly before the student government candidates were to be announced.

"Idk if you know him but I heard there may be beef???" read Dugan's message to Brenda. "Not sure lol but he said he would really like to talk to you if necessary!"

Brenda replied, "To be honest that kind of changes everything… he treated me inappropriately my freshman year, messaged my mom and trapped me in the hallway in my towel."

Further texts from Brenda to Dugan relayed the content of Kanos' messages to Brenda and her mom from 2015, that Brenda went to her RA about Kanos and about his "sexual advancements" to her friends.

"Omg I'm sorry!!" Dugan wrote in her reply to Brenda. "That's not cool. He didn't tell me what happened and I'm not excusing him but all he said was how he acted immature freshman year and he's grown up a lot. That's all he told me so I'm sorry about that."

Brenda decided to remain silent after Dugan asked her for a "favor" in March 2017.

"I know you don't like him, but do you mind not saying anything to anyone?" Dugan wrote to Brenda in text messages obtained by Fourth Estate, hours after Brenda explained her concerns with Kanos. "I've gotten really passionate about this and while we're on the same ticket, I have a lot of potential power if I win and plan on doing things that have nothing to do with him. There's a lot I would love to bring to Mason. I would just really love that kind of quiet support from you as a friend."

Dugan did not respond to multiple requests for an interview or comment about this story.

Speaking to Fourth Estate, Brenda added that she does not blame Dugan "at all, for any of this."

But Brenda was still scared of having to interact with Kanos in student government. She decided to make her experiences with him public.

"[At first] I was going to write an anonymous article with everything in it," said Brenda, but she instead decided to meet with student government advisor Phil McDaniel on March 30, 2017 to express her concerns about Kanos' behavior.

As a university employee, McDaniel is a "responsible reporter" according to Mason's Title IX policy. This means he is "required to report to the university's Title IX Coordinator all relevant details (obtained directly or indirectly) about an incident of prohibited conduct that involves any student as a complainant, respondent, and/or witness, including dates, times, locations, and names of parties and witnesses," according to the Title IX website.

McDaniel did not respond to Fourth Estate's request for comment on this story. But according to emails later sent to Brenda by the Title IX office, student government advisors reported her complaints about Kanos on March 30.

## UNHEARD GRIEVANCE

Next, Brenda filed a grievance on April 6, 2017 with the Student Government Elections and Disputes Committee (EDC) against Kanos' eligibility to be president.

"Over the past two weeks, several other female students have reached out to me, relaying to me similar stories of unwarranted sexual advances by this candidate," Brenda wrote to the EDC in the 2017 grievance. "Although these students are not comfortable coming forward personally and sharing what has occurred between them and David, I personally feel like it is my responsibility to alert those with positions of influence about his misconduct."

The grievance detailed the incident in Roosevelt Hall during her freshman year, as well as screenshots of "sexual and predatory" messages sent by Kanos to Brenda and her mother through Facebook.

"There has been an ongoing Title IX investigation open on this candidate for sexual harassment based upon his treatment of myself, to which I have personally felt threatened by this candidate," Brenda wrote. "Having to see this candidate is triggering for me, and to me, gives the impression that sexual misconduct is excusable."

Mason's student government election code states that candidates are responsible for all violations of university policies — including Title IX. Section 1.7 of the election code states: "Should university policies be violated, the candidate, and not the Commission or Student Government, is responsible for all transgressions."

The rule does not specify time frame limit for reporting any violations that may have taken place.

Brenda's grievance claimed that Kanos had broken five different election codes, including 3.2.2.1 (No threats shall be made against other campaigns, candidates, students, faculty, staff, or administrator) and 3.2.2.2 (The medium in which incompliant threats can be made includes, but is not limited to, verbal, written, online, in-person, or in the form of email, text message, or other method of communication).

The EDC's Election Code states that when a grievance is filed, the committee must hold a hearing and post a copy of the grievance as well as meeting minutes from the hearing. But Brenda received a response by email the next day,

April 7, 2017.

"The commission only hears election grievances for incidents that take place during the current Student Government Election cycle," the EDC's email read. "Because of the nature of the grievance the EDC has forwarded your email to Jennifer Hammat, George Mason University's Title IX Coordinator, to review."

In an email to Fourth Estate, the EDC wrote, "The rules that bound the EDC are straightforward and outline that all grievances filed must have an incident that occurs within the timeframe of the election."

A response from Fourth Estate requesting a copy or citation of this rule has not been answered at the time of this article.

"It is my interpretation that Student Government's governing documents do not outline a timeline in which grievance hearings must be adhered to, but does lay out how a grievance shall be dealt with," said Caiti Lively, speaker of the 2017-2018 student senate. "It is the EDC's responsibility to deal with all grievances brought forward."

According to Brenda, she reached out to McDaniel again for more information on why her grievance would not be heard but was again told that "there was nothing they could do because it all happened before he ran for president."

Kanos was elected Mason's student body president on April 11, 2017.

## MEETING WITH TITLE IX

According to Mason's Title IX Policy 1202, "once an institution has notice of an act of Prohibited Conduct, it is required to (1) take immediate and appropriate steps to investigate or otherwise determine what occurred; and (2) take prompt and effective action to end any misconduct that occurred; remedy its effects; and prevent its recurrence."

Emails obtained by Fourth Estate show that Brenda's complaint towards Kanos was reported to Mason's Title IX Coordinator Jennifer Hammat by student government advisors on March 30, 2017.

According to the EDC's email on April 7, Hammat had also been sent a copy of the election grievance filed by Brenda which included screenshots of messages from Kanos.

On April 19, 2017 Brenda emailed Hammat, "I just wanted to check in if there is any progress with the Title 9 [sic] investigation with David Kanos. Any information would be greatly appreciated."

On April 20, 2017, nine days after Kanos was elected to his position, Hammat made her first contact with Brenda via email, introducing herself and explaining that she received a report from student government advisors about the incident. The email provided a range of options available to Brenda as a victim.

Emails provided to Fourth Estate show that Brenda exchanged emails during the summer to schedule a meeting about her report with Katusia Lundi, Equal Opportunity and Diversity Specialist in the CDE office with certifications in "Title IX Training" and "The Four Corners of Title IX Regulatory Compliance." Lundi has been in her position with CDE since September 2016.

After several attempts, Brenda met with Lundi to discuss her encounters with Kanos on June 27, 2017.

"She made me reenact the hallway incident and show her the pictures [of Kanos' messages]," said Brenda. "She said she would give me any information as updates were given."

Update: "During the intake meeting with CDE investigator Kat Lundi, Ms. Lundi explained to the Complainant, verbally, that the Facebook messages from before her freshman year were outside the scope of our jurisdiction (we cannot investigate those who were not yet students) and that the towel incident, as described to Ms. Lundi at the time, would not rise to the level to warrant an investigation." said Williams.  The CDE did not provide this information in writing to Brenda, but "has since changed its practice and will now follow up in email communication to all Complainant's about their in-take meeting, and next steps, if applicable," said Williams.

Update: According to Williams, Brenda said "she was going to "retrieve" and locate additional evidence" and that Lundi "was told by the Complainant, that she would hear back from her within a week or so. Ms. Lundi reached out to the Complainant multiple times in the late spring of 2017 and did not hear back from the Complainant."

Shortly before classes began for the fall 2017 semester, Brenda sent another email asking for the status of her report.

"Now that the school year is starting, is there anyway to get an update on the investigation into David Kanos?" Brenda wrote to Lundi on August 24, 2017.

They arranged one last meeting in the CDE office at 2 p.m. on August 31, 2017. During the meeting with Lundi, Brenda said she was told to "wait for emails with updates," but never heard back.

Brenda claims she still has not heard anything about her investigation more than one year after her original report to the EDC.

"There were months when I would send emails saying 'What's an update? Can I get an update?'" she said. "They said they would keep me updated, but they really didn't."

Update: Brenda "met with Kat Lundi on August 31, 2017, and again indicated she had no new materials or information to share with Lundi. The Complainant indicated she would send those materials to Hammat. Lundi explained that there was not an open investigation and that Hammat would be available to receive the materials she referenced. This was the last contact we had with the Complainant." said Williams.

Update: Brenda responds, "They were so vague and confusing in the meetings and never explicitly told me anything. They just told me they were meeting with David and they'd keep me updated, which they never did." She adds, "In our meetings they'd just say that they were working on it and would keep me updated. I don't ever remember them telling me I didn't have enough information. They told me in the beginning I didn't have enough for the election commission because it was before he ran, but for my own personal case, I don't remember that at all."

Based on Brenda's statements to Fourth Estate and the grievance, Brenda believed that her reports were a "formal investigation" against Kanos. But according to Hammat, there have been zero formal Title IX investigations involving student government members between 2016-2018.

In the first email Hammat sent to Brenda about her options, a distinction between formal and informal investigations was not specified in the body of the email.

## HOW TITLE IX REPORTING WORKS

"The university reviews every Title IX report received," wrote CDE Vice President Williams in an email to Fourth Estate.

"If a report includes facts that warrant an investigation, the university opens a formal investigation and acts promptly," continued Williams. "There are also times when a Title IX report is made, but a formal investigation cannot be opened. The reasons for this can be a lack of necessary factual information or the incident in question doesn't arise to the level of being a violation of Mason policy, amongst others."

According to Hammat, the office uses a "preponderance of the evidence standard" when conducting a formal investigation, "which means more likely than not, or 50.1 percent." Evidence can include screenshots, witnesses or physical evidence.

"When people come in to tell me their experience, one of the first things I will say is 'so what are you looking for?'" said Hammat, speaking in an interview with Fourth Estate.

Hammat explained that most students are seeking no-contact orders – a campus conduct process designed to prevent two students from contacting each other, or an email to faculty to explain a student's absences or missed assignments due to a Title IX issue or simply wanting Title IX staff to have an informal conversation with the perpetrator.

"Less than 10 percent report with the intent of an investigation," she explained.

But Mason's Title IX office only has two employees — Hammat and Title IX investigator Megan Simmons — assigned to handle investigations for all of the university's 35,000 students and three campuses. Both staff members also handle other aspects related to Title IX compliance in addition to student complaints and training.

"If we're working 14 cases at once, that could elongate all of those processes," said Hammat. "I'd love to tell you that I have ten hours a week to write nothing but investigation reports, but I am lucky if I even get a few hours a week to write those reports."

In an email to Fourth Estate, Williams wrote, "while there are no direct plans to expand the office at the moment, the university is always examining ways to add the resources necessary to respond to, prevent, and eradicate sexual violence on campus."

## THE "INVESTIGATION"

According to Brenda, the Title IX office did not give her a timeline of when her "investigation" would be finished, and she was only told it would be "a really slow process."

While it seems Brenda never opened a formal investigation that she believed she did, there have been multiple formal Title IX investigations at Mason that took longer than 60 days to complete.

Mason's Title IX Policy 1202 states: "Typically, the period from commencement of an investigation through resolution (finding and sanction, if any) will not exceed sixty (60) calendar days."

According to Hammat, four Title IX cases took longer than 60 days to complete during 2016-2017. Hammat attributed these to student initiated delays including scheduling, reconsideration, availability, time to review materials and time to provide evidence and witnesses.

In 2017-2018, the number of cases going beyond the 60-day policy increased to ten. Hammat also attributed these to student-initiated delays and administrative process delays including campus closures for weather, holiday breaks and administrators being out of office.

"If an investigation is going to be over 60 days, we provide a status update as to why," Hammat said.

On September 12, 2016, the United States Department of Education Office for Civil Rights (OCR) sent a letter to Mason President Ángel Cabrera stating the OCR had received a complaint from a student claiming "the University failed to promptly and equitably respond to her report of sexual assault and, as a result, she was subject to a sexually hostile environment."

The letter explained that OCR determined it has jurisdiction to open the complaint for investigation, however it "in no way implies OCR has made a determination on the merits of the complaint."

"The university is taking this very seriously," wrote CDE Vice President Williams, in a statement released the following day. "We will cooperate fully with the investigation, which will review the handling of sexual misconduct and harassment complaints involving students, faculty and staff."

According to the U.S. Dept. of Education website, the OCR investigation is still pending as of March 30, 2018.

## AFTERMATH

Since her last contact with the Title IX office, Brenda has shifted her focus back to school and work. But she still wonders why the office has never updated her about the report, and why the EDC refused to hold a hearing or publish her grievance as required.

"Students who wish to run for Student Government must be in good standing with the university," CDE Vice President Williams wrote to Fourth Estate. "That includes no Title IX charges or discipline. While I can't speak directly to this, it is my understanding that David Kanos was in good standing with the university when he ran for office, and he remains in good standing now as Student Government President."

During the 2017-2018 school year, Student Government focused on taking a stand against sexual assault and harassment. An amendment to suspend any student government member under investigation by the university was introduced in April 2018, but was not voted on by the 38th Student Senate. Instead, the amendment has been tabled until the fall 2018 semester.

Kanos completed his term as student body president on April 26, 2018.

*Photo by Allie Thompson*

   campus     Need To Know     News     Student Government

About Fareeha Rehman
Fareeha Rehman served as Co-Editor-in-Chief for the Fourth Estate from fall 2017 to spring 2018. Prior to that, she was the Online Editor and began her time at IVE as a staff writer for news in 2016. She graduated in May 2018 with a B.A. in Communication (Journalism concentration). Follow her Twitter @RehmanFareeha
View all posts by Fareeha Rehman →

‹ Read Previous
Cradling a freshman phenom

Read Next ›
Transparent GMU lawsuit update


**Virginia Supreme Court Rules Against Transparent GMU**
DECEMBER 15, 2019


**Mason Weekly Crime Log**
NOVEMBER 18, 2019


**Last Week in Politics**
NOVEMBER 18, 2019

**Sponsored**

**The Reason Chris Brown Is Banned From UK Is Unnerving**
Miss Penny Stocks

**Prevent Gutter Clogging With This Trick. See Why Gutter Cleaning Companies Hide This From Homeowners**
LeafFilter Partner

**Meet The Skincare Made For Women Over 40 In Mind. Real Naturals Repair and Prevent Creams**
Color The World Lipsticks

**You Will Be Surprised How Affordable LeafFilter™ Is!**
LeafFilter Partner

**These Venus® Dresses Are Perfect For Every Body Type**
Venus

**How To Empty Your Bowels Every Morning - Top Surgeon Explains How**
Gundry MD Bio Complete 3 Supplements

Comments    Community            1  Login

♡ Recommend      ⌄ Tweet      f Share              Sort by Best

Start the discussion…

LOG IN WITH              OR SIGN UP WITH DISQUS  ?

                         Name

Be the first to comment.

✉ Subscribe   Ⓓ Add Disqus to your siteAdd DisqusAdd

**Sponsored**

**You Won't Believe Why Chris Brown Just Got Banned From The U.K.**
Miss Penny Stocks

**Check Out Erin Andrews's Annual Salary**
FetchSport

**The Average Football Fan Only Gets 7 Right! Can You Beat That?**
QuizGriz

**20+ Surprising Foods That Instantly Cause Cancer!**
HealthNormal

**Simple Trick Melts Abdominal Fat At Night (Try It Now)**
Diet Reviews

**The Worst Dog Breeds To Adopt According To Veterinarians**
Science101

## RECENT COMMENTS

**Alexander Kenny**
Great story! Should be distributed on a leaflet a…
FEBRUARY 9, 2018

 **Amanda**
I'll happily watch the curling competitions and c…
FEBRUARY 8, 2018

**Scarlett Simpson**
Really great article! It definitely brings a pers…
FEBRUARY 7, 2018

**Johnny Walker**
I never thought about it but I bet biathlon reall…
FEBRUARY 5, 2018

## WHERE TO GET PRINT COPIES




3269
Likes

3933
Followers

**SUBSCRIBE**
RSS Feeds

© Fourth Estate Designed by FairPixels.com