**EXHIBIT 26**



Faculty Senate

4400 University Drive, MS 5E5, Fairfax, Virginia 22030
Phone: 703-993-2990; Email: facsen@gmu.edu

May 15, 2019

President Cabrera, Provost Wu, & Senior VP Kissal
George Mason University
4400 University Dr.
Fairfax, VA 22030

Dear President Cabrera, Provost Wu, and Senior VP Kissal:

We are writing to express our grave concerns regarding the handling of cases of allegations made against faculty members and to request immediate actions. Our concerns are based on our review of cases of complaints about alleged faculty misconduct that were submitted to Compliance, Diversity, and Ethics (CDE) via the Title IX Office and to Human Resources (HR) via Employee Relations. To engage the full leadership of the University while protecting the confidentiality of the faculty members, we are sending this letter outlining our broader concerns without accompanying documentation. We will follow up with you and the Dean involved in each case with a more detailed letter that includes specific examples from each case we have reviewed.

After reviewing extensive documentation provided by multiple faculty members, we noted several ways in which faculty members have not been afforded procedural due process in the handling of these allegations. These violations of due process are inconsistent with Section 2.10.2 of the Faculty Handbook (which asserts that all parties involved in such allegations have a right to procedural due process), as well as principles advanced by several institutions, such as the American Association of University Professors (https://www.aaup.org/issues/appointments-promotions-discipline/faculty-misconduct-and-discipline-2005) and the Foundation for Individual Rights in Education (https://www.thefire.org/research/fire-guides/fires-guide-to-due-process-and-campus-justice/fires-guide-to-due-process-and-fair-procedure-on-campus-full-text/). Moreover, they are reflective of a general lack of clearly specified processes and procedures for handling such allegations, such as those that exist in Faculty Handbook Sections 2.6.2, 2.9.3, 2.10.9, and 2.11.2, as well as those that exist in the context of other University policies (e.g., https://diversity.gmu.edu/about/grievance-procedures).

We are not writing to address the specific merits of any of the cases we reviewed. Rather, we are seeking to engage the full senior leadership of the University in working with us to redress the violations of due process and faculty rights that have occurred and are occurring. Below, we list ways in which due process appears to have been violated in the cases we reviewed (based on documentation provided to us by the faculty members), after which we make specific requests. In our follow-up letters, we will provide specific examples and documentation that support these observations.

1. **Lack of appropriate notification of allegations brought to HR.** In cases involving allegations to HR, faculty members were not informed of the existence of allegations before a meeting – rather, they came to the meeting completely unprepared to have allegations verbally levied against them. We note that, in the case of allegations made to Title IX, faculty members have received general notification that allegations had been made when receiving a meeting request.

2. **Inadequate opportunity to respond to allegations.** First, in several cases, faculty members received no written description of allegations upon notification or even prior to being interviewed about the allegations. This is more variable in Title IX cases, with some faculty receiving formal, written descriptions and others receiving only an informal email summary of allegations, after requesting such a summary (and after having been interviewed). In HR cases, faculty members either never received a formal written summary of allegations or received a written summary only after a formal letter substantiating the allegations was inserted in their personnel file. Moreover, in at least one HR case, the faculty member was never formally interviewed with an opportunity to fully respond to the allegations.

3. **Presumption of guilt/Biased investigations.** In at least one HR case, a faculty member was removed from all contact with staff and students *during an investigation* (and without following procedures specified in Faculty Handbook Section 2.10.9). In multiple HR cases, the faculty members provided evidence from other parties that contradicted the allegations, but we saw no indication that such exculpatory evidence was addressed in the ultimate findings.

4. **Attempts to coerce confessions.** In HR cases, faculty members reported multiple instances during which supervisors or representatives of HR tried to "force" them to admit to the allegations, including statements that things would be "easier" if they did confess.

5. **Lack of timely communication.** In HR cases, email records indicate that faculty members frequently received no response to their requests for updates, or that such updates came only after inordinately long periods of time.

6. **Lack of clarity in presenting evidence that supports decisions.** The standard for making a decision in Title IX cases is stated as the "preponderance of evidence," but evidence provided in letters of determination is minimal. There is no established standard for making a decision in HR cases, nor is there clear evidence provided in supporting decisions.

7. **Inadequate appeal process.** In line with the fact that there are no clear published policies or procedures to guide investigation of allegations made to HR, there was no clear indication of an opportunity to appeal the findings of the HR investigations. In the case of appeals of Title IX findings, the individual who reviews the appeal is the VP of CDE, who is the direct supervisor of the Title IX office. This would seem to present a lack of independent objectivity in reviewing appeals.

8. **Lack of consistency in processes and sanctions.** The handling of potential removal from duties during an investigation is inconsistent across cases. Moreover, the severity of sanctions varies greatly across cases as well, with little relation to variation in the severity of allegations.

In sum, we find that the processes for handling allegations against faculty members are flawed. Each of the instances above represent violations of faculty rights. Given the opacity with which such investigations are conducted, and the serious ramifications for faculty members' reputations, productivity, and job security, faculty are often hesitant to and fearful of objecting to such violations. Thus, we assume that these represent only some of the cases in which violations have occurred, as others have likely gone unreported to us. We further note that, even when a complaint was filed through Title IX, which has more established policies and procedures, there were defects in the process that seriously affected faculty rights.

We are requesting a meeting of the Provost, Senior Vice President, and any other personnel deemed relevant (e.g., VP of Human Resources, VP of Compliance, Diversity and Ethics) with the Faculty Senate Executive Committee, to be scheduled as soon as possible, to discuss our findings, as well as the following proposed remedies:

1. Representatives from HR, CDE, and other relevant administrative offices work with representatives of the Faculty Senate to establish a clear set of guidelines and procedures for handling allegations against faculty members that will protect the rights of both complainants *and* respondents. This work should utilize external consultants as needed, and draw on best practices at other universities and in other relevant offices. The guidelines and procedures should address all of the problems described above and any other identified issues, including but not limited to:
    a. The authorization under which Human Resources is charged with conducting an investigation of faculty behavior should be clearly described in writing.
    b. The completed set of guidelines and procedures under which the investigations are to be conducted should be published in writing.
    c. Respondents in cases should be notified in writing that they may have an advisor present during all meetings.
    d. A set of guidelines and procedures for appealing a determination should be published in writing. Appeals should be reviewed by an independent set of individuals who have not yet been involved in the case.

2. Representatives from HR, CDE, and other relevant administrative offices work with representatives of the Faculty Senate to establish a clear set of guidelines and procedures for issuing sanctions other than dismissal (which is already addressed in the Faculty Handbook). This work should utilize external consultants as needed, and draw on best practices at other universities and in other relevant offices.

3. For all investigations of alleged faculty misconduct that are ongoing or that have been concluded within the last two years, the administration work with faculty representatives (designated by the Faculty Senate) to evaluate whether findings of investigations were impacted by any of the issues enumerated above, and if so, reopen those investigations if desired by the respondent for that case. This work should utilize external consultants as needed.

4. Upon completion of guidelines and procedures for issuing sanctions and renewals (see #2), for all cases in which sanctions of faculty members are currently in place, the administration work with faculty representatives (designated by the Faculty Senate) to evaluate whether those sanctions are consistent with the newly established guidelines and procedures. If not, that group should work to realign the sanctions with the newly established guidelines.

5. If the volume of work for #3 and #4 above is large enough to warrant it, faculty representatives involved in the work should be compensated for their time through either course releases or stipends that are commensurate with the workload.

We understand that allegations like these are highly complex, and that the University has a duty to protect all of its constituents – students, staff, and faculty. However, the lack of process for addressing

complaints like these is violating that duty in regard to protecting the faculty who have allegations made against them.

As a final note, the Faculty Senate Chair and Executive Committee are charged with acting on behalf of the Faculty Senate in the summer as needed. Our review does not preclude future or concurrent review by the Grievance Committee. Also, Shannon Davis is both a member of the Executive Committee and the incoming Faculty Senate Chair, with her term beginning on May 18, 2019. However, she is currently serving in an interim capacity as the Senior Associate Dean of CHSS. To avoid any possibility of an apparent conflict of interest, Dr. Davis will not participate in this review until her term as Interim Senior Associate Dean ends on August 1. Until that time, Keith Renshaw, outgoing Faculty Senate Chair, will continue to operate in that role for matters directly related to personnel issues, such as this one. The Executive Committee will update the Faculty Senate on progress at our first meeting of the Fall 2019 semester.

We look forward to your quick response and to working with you to redress these problems.

Sincerely,

| | |
|---|---|
| Keith D. Renshaw | Suzanne Slayden |
| Chair, Faculty Senate | Chair, Academic Policies |
| | |
| Tim Leslie | Girum Urgessa |
| Chair, Budget & Resources | Chair, Faculty Matters |
| | |
| Melissa Broeckelman-Post | Lisa Billingham |
| Chair, Nominations | Chair, Organization & Operations |

CC: Shernita Rochelle Parker, Interim VP of Human Resources and Payroll
　　Julian Williams, VP of Compliance, Diversity, and Ethics
　　Peggy Agouris, Dean, College of Science
　　Ann Ardis, Dean, College of Humanities and Social Sciences
　　Kevin Avruch, Dean, School for Conflict Analysis and Resolution
　　Kenneth Ball, Dean, Volgenau School of Engineering
　　Zofia Burr, Dean, Honors College
　　Henry Butler, Dean, Antonin Scalia Law School
　　Rick Davis, Dean, College of Visual and Performing Arts
　　Mark Ginsberg, Dean, College of Education and Human Development
　　Germaine Louis, Dean, College of Health and Human Services
　　Maury Peiperl, Dean, School of Business
　　Mark Rozell, Dean, Schar School of Policy and Government



**Office of the Provost**

4400 University Drive, MS 3A2, Fairfax, Virginia 22030
Phone: 703-993-8770, Fax: 703-993-8871

May 21, 2019

Dear Faculty Senate Executive Committee:

In response to recent communications from the faculty senate highlighting the concern regarding the handling of misconduct allegations associated with faculty, we are recommending the following actions to take place over the next few months.

Setting aside individual cases that have and are being handled by HR and the Office of Compliance, Diversity and Ethics, our actions will focus on the overall processes, policies and procedures Mason has in place and to determine how to enhance and improve those procedures for handling employment matters.

To this end, we will request the University Auditor to complete a formal internal audit to determine if (i) GMU policies and procedures related to the handling of faculty misconduct allegations are in alignment with Commonwealth law, our bylaws, faculty and employee handbooks, and other requirements; (ii) the auditor will also compare Mason's policies and procedures with policies and procedures at other similar universities.

In addition and in parallel to the audit, we will convene a multi-constituent committee to determine how we can enhance and improve our procedures. The guiding principles for this will be:

1. To establish the current process for handling allegations of faculty misconduct
2. Identify where there are gaps with compliance with state and federal regulations and /or recommend incorporating best practices
3. Identify process and procedure improvements for a future state that will align with state, federal and regulations and best practices
4. Identify policy, procedure changes that will require update and ensure guidelines are written in a clear manner
5. Develop mandatory training and education related to the new procedures and policy
6. Establish a framework for a communication plan to all faculty and staff

We are recommending the following representatives to the committee:

1. Human Resources: Danielle Reich, Director of Employee Relations
2. University Audit: Edward Dittmeier, University Auditor
3. Office of the Provost: Renate Guilford, Associate Provost for Academic Administration
4. University Counsel: Brian Walther, University Counsel
5. Compliance, Diversity, and Ethics: Elizabeth Woodley, University Policy Manager
6. Faculty Senate: Keith Renshaw
7. Faculty Handbook Revisions Committee: Girum Urgessa

The committee will engage over the summer and will be responsible for updating and transitioning the new Chief of Human Resources on the status of the work as well as regular updates to both of us throughout this process.

Sincerely,

S. David Wu
Provost and Executive Vice President

Carol D. Kissal
Senior Vice President for
    Administration & Finance