**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| | ) | |
| v. | ) | Civil Action No.: 1:19-cv-01249 |
| | ) | |
| GEORGE MASON UNIVERSITY, *et al.* | ) | |
| | ) | |
| | ) | |
| *Defendants*. | ) | |

**REPLY BRIEF IN SUPPORT OF DEFENDANT THE RECTOR AND VISITORS OF**
**GEORGE MASON UNIVERSITY'S MOTION TO DISMISS COUNT I**

Plaintiff's attempts to argue that he has sufficiently alleged his Title IX claims only underscore that they must be dismissed. Plaintiff has given the Court no reason to believe that (1) Mason is biased against men, (2) that its determination that Plaintiff repeatedly discussed sexual matters with his students creating a hostile environment was incorrect, or (3) that Mason treats male faculty members differently than female faculty members. To the contrary Plaintiff's complaint alleges facts that show (1) both the decision makers in his case and Mason in general are not biased against men, (2) that the findings against Plaintiff are correct and Plaintiff received more than the due process to which he was entitled, and (3) that Plaintiff has no basis to allege selective enforcement. Having both failed to plead his claim and having pled himself out of his claim, Count I must be dismissed with prejudice.

## I. PLAINTIFF HAS NOT PLAUSIBLY ALLEGED THAT THE OUTCOME OF HIS TITLE IX CASE WAS MOTIVATED BY GENDER BIAS.

### A. Plaintiff Fails To Identify Any Statements by University Officials That Evidence Gender Bias.

In *Doe v. Marymount Univ.*, on which Plaintiff repeatedly relies, this court held that "a Title IX plaintiff successfully alleges gender bias if he or she points to statistical evidence of gender bias in the University's decision making, policies and procedures that are designed to reach gender-specific outcomes, and/or statements by university officials evidencing gender bias." 297 F. Supp. 3d 573, 585 (E.D. Va. 2018). Plaintiff concedes that he has no allegations of statistical evidence of gender bias or of policies and procedures designed to reach gender-specific outcomes. His entire case thus rests on whether he has properly alleged "statements by university officials evidencing gender bias." *Id.*

Given his pleading burden, it is notable what Plaintiff did not argue in his opposition. He does not contend that Dr. Hammat or Mr. Williams have ever actually expressed a bias against

males or stated a preference for females.  Nor does he identify a single statement in which Dr. Hammat or Mr. Williams actually express an "outdated or discriminatory view of gender and sexuality."  *Id.*[1]

Instead, Plaintiff points to innocuous and neutral statements and then engages in inferential gymnastics to divine a meaning that is completely divorced from —and in some cases contrary to—the actual words used.  Each of the allegedly biased statements are before the Court, which can judge for itself based on the actual words used whether gender bias can reasonably be inferred from any of them.  A review of Dr. Hammat and Mr. Williams' actual words and the inferences Plaintiff is asking this Court to make demonstrates that Plaintiff's asserted inferences are not even conceivable, let alone plausible.  *See Doe v. Rector & Visitors of George Mason Univ.*, 132 F. Supp. 3d 712, 732-33 (E.D. Va. 2015) ("*GMU*") (allegations from which an inference of gender bias is "conceivable or possible" are insufficient; the "factual allegation [must] make that inference cross the line from conceivable to *plausible*.").

*First*, Plaintiff cannot plead that Dr. Hammat is biased based on statements made by someone else.  *See* Opp. at 21-22, bullet points a, e, and f.  Each of these allegations concern statements that were made by a witness or one of the Complainants, not Dr. Hammat.  Plaintiff's contention is that it is somehow reasonable to infer that Dr. Hammat has a gender bias from Dr. Hammat putting Plaintiff on notice of the allegations against him and conveying in her letters of determination what other people said during the investigation.  One cannot infer anything about

---

[1] Contrary to Plaintiff's assertion, *see* Opp. at 10 n.4, Mason is not arguing that the erroneous outcome claim is limited to Dr. Hammat's determination.  Mason agrees that Mr. Williams appeal decision is relevant to Plaintiff's erroneous outcome claim.  The distinction Mason was drawing was between (1) the determination that Plaintiff violated Title IX and (2) the sanctions and disaffiliation that occurred afterwards, the latter of which is not relevant to the Title IX erroneous outcome claim.

Dr. Hammat's beliefs from someone else's statements.  The only thing these allegations demonstrate is that Dr. Hammat is thorough in doing her job and ensured that Plaintiff had adequate notice of the allegations against him.

Moreover, the inferential leaps Plaintiff asks the Court to make are unsupportable.  There is nothing remotely related to gender, let alone anti-male gender bias, in (1) stating that a student referred to a story told by Plaintiff (which Plaintiff admits included a visit to an area where illegal mistresses lived and a road known as "love street," Compl. ¶ 262) as "erotic," (2) noting that one of the Complainants described the woman in that story as "not [Plaintiff's] wife," (3) relaying a student's belief that she was being "groomed," or (4) stating that one of the allegations was that Plaintiff invited one of the complainants to an "explicit" presentation.

*Second*, Plaintiff's assertion about an "insinuation" supposedly embedded in Mr. Williams' appeal decision is absurd.  Like Plaintiff's inexplicable allegation that Mr. Williams expressed "outrage" in his appeal decision about Plaintiff being in a hot tub with students, *see* Mot. at 14, Plaintiff's assertion finds no support in Mr. Williams' matter-of-fact appeal decision, *see* Mot. Ex. 9.   No reasonable person reading Mr. Williams appeal decision could interpret him as being outraged about Plaintiff being in a hot tub with graduate students or insinuating anything about the maturity of female graduate students.

*Third*, Plaintiff misrepresents (and in some cases changes) the statements.  Plaintiff continues to disingenuously claim that Mr. Williams said that campus administrators have a "'moral obligation' to protect and care for female students" despite then quoting what Mr. Williams actually said, which was that campus administrators have a "moral obligation to protect and care for our students and our community."  Opp. at 25.  Plaintiff also takes a statement out of context and uses selective quotations to assert that Dr. Hammat believes that "being emotional"

3

is a "stereotypical female trait."  Opp. at 22.  But the actual statement is: "[Complainant 1] indicated that the interactions with [Plaintiff] included regular and gratuitous stories detailing sexual encounters, disparaging comments and actions regarding stereotypical female traits (e.g., being emotional)."  *See* Mot. Ex. 5.  Read in context, it is clear that what this statement means is that Complainant 1 asserted that ***Plaintiff*** made comments that were premised on stereotypes about females, e.g., calling their arguments emotional.  Nothing in that statement plausibly suggests that Dr. Hammat believes that females are more emotional.  Moreover, as discussed above, this is a description of what someone else said and, therefore, cannot be a basis to infer anything about Dr. Hammat's beliefs.

*Fourth,* Plaintiff incredibly tries to argue that the mere reference to a person's gender demonstrates bias.  Opp. at 23.  He asserts, without any explanation, that Dr. Hammat's use of the female pronoun to refer to potential victims of sexual assault is indicative of gender bias.  *See Doe v. Univ. of Chi.*, No. 16 C 08298, 2017 U.S. Dist. LEXIS 153355, at *13 (N.D. Ill. Sept. 20, 2017) (rejecting argument that use of female pronouns to refer to victims of sexual assault indicated gender bias).  Similarly, Plaintiff tries to argue that Mr. Williams stating that female students may feel unsafe if sexual assault or harassment are not investigated evidences a gender bias. There is no gender bias in recognizing that female students may feel unsafe if a college campus does not address sexual assault and harassment.  If Plaintiff's argument were to be accepted, it would lead to the absurd result that any statement by a Title IX professional that recognizes that female students are potential victims of sexual assault could be used to demonstrate bias.

*Fifth*, Plaintiff's attempt to equate feminism with anti-male gender bias must be rejected. He asks the Court to find that it is reasonable to infer that the mere participation in an event

sponsored by a feminist organization makes one incapable of being impartial.  Opp. at 24.  This unsupported assertion is itself based on a bias against feminists as being anti-male.  As the Sixth Circuit has held: "being a feminist . . . does not support a reasonable inference that an individual is biased against men."  *Doe v. Miami Univ.*, 882 F.3d 579, 593 n.6 (6th Cir. 2018).  Merely participating in an event sponsored by a feminist organization certainly provides no basis to make any inference about Dr. Hammat's beliefs.

*Finally*, Plaintiff asks the Court to infer a meaning that is directly contradicted by some of Dr. Hammat and Mr. Williams' statements.  Plaintiff argues that the Court can infer that Dr. Hammat harbors "gendered assumptions about males as sexual predators," Opp. at 23, based on a 2013 interview in which Dr. Hammat describes how her sorority protected its members and what she told fraternity members about preventing sexual assault.  But as explained in Mason's opening brief, Dr. Hammat's statements demonstrate the exact opposite.  Dr. Hammat explicitly states that she is not assuming that sexual assaults occurs in all fraternity houses.  *See* Mot. Ex. 10.  Similarly, her statement that fraternity members need to be vigilant and take action to prevent the possibility of sexual assault against females occurring in their fraternity houses, recognizes that most men will want to take actions to prevent sexual assault.  Dr. Hammat's statement is also correct.  Men should be angry about sexual assaults occurring against women and play a crucial role in preventing them.   There is no bias in conveying this important message to men.  *Doe v. Fairfax Cnty. Sch. Bd.*, 403 F. Supp. 3d 508, 519 (E.D. Va. 2019) ("Courts have widely held that vigilance in enforcing Title IX  . . . is not evidence of anti-male bias.").  Nor could one infer from her statements that Dr. Hammat believes woman are "in need of protection," Opp. at 23, since she describes how her fellow sorority sisters took actions on their own to protect themselves against sexual assault.

Plaintiff also tries to argue that the Court should infer that Mr. Williams always believes female students based on his statement that "[j]ust because a panel may not have had enough information to determine that there has been a probable policy violation doesn't mean that we don't believe you, doesn't mean that we think you are lying."  Opp. at 25.  Nothing in this statement suggests that Mr. Williams always believes female complainants; it instead demonstrates that Mr. Williams understands, and wants complainants (of all genders) to understand, that a policy violation can only be found if there is sufficient information to corroborate the allegations.  Moreover, as Mason explained in its opening brief, this statement cannot be a basis to infer gender bias, since both male and female students can be complainants in Title IX cases.

Simply put, the Court should not accept Plaintiff's conclusory assertions, false insinuations, and far-fetched inferences; none of which pass the straight-face test, let alone the *Twombly*-plausibility test.

## B.  Plaintiff's Other Attempts to Demonstrate Gender Bias Fail As Well.

Plaintiff's failure to plead any statement by a university official that demonstrates gender bias, as required by *Yusuf v. Vassar Col.*, 35 F.3d 709, 715 (2d Cir. 1994) and *Marymount*, should be the end of Plaintiff's case.  However, Plaintiff persists in arguing that he has alleged gender bias based on (1) his disagreement with how Dr. Hammat and Mr. Williams weighed and assessed the evidence in his case and (2) supposed "pressure" Mason faced.  Neither support a plausible inference of gender bias.  Indeed, as demonstrated in Mason's motion and left uncontested by Plaintiff, Plaintiff's own allegations disprove that Mason is biased against men.

To support the first argument, Plaintiff points to allegations which merely state his disagreement with determinations Dr. Hammat and Mr. Williams made. *See* Opp. at 21-23

6

(paragraphs b, d, g, h, and j); *id.* at 24-25.  But Plaintiff does not provide any explanation for how those allegations, which contain no references to gender, possibly evidence gender bias. That Plaintiff disagrees with Dr. Hammat or Mr. Williams is not a basis to infer gender bias.

Moreover, even if Plaintiff were correct that Dr. Hamamt and Mr. Williams' decisions were "against the weight of the evidence," Opp. at 26, that would not be a basis to infer gender bias.  Plaintiff cannot plausibly allege that the reason Dr. Hammat or Mr. Williams made their determinations was gender bias, as opposed to any other reason.  This exact argument was rejected in *GMU*.[2]  As the court explained there, allegations "that gender bias is the 'only' explanation for the outcome of [the] proceedings are entirely conclusory and entitled to no weight under *Twombly*."  132 F. Supp. 3d at 732-33; s*ee id.* ("[T]here are a number of possible explanations for any disparate treatment, of which gender-motivated bias is only one."); *see Doe v. Loh*, PX-16-3314, 2018 U.S. Dist. LEXIS 53619, at *24 (D. Md. March 29, 2018) *aff'm* 767 Fed. Appx. 489 (4th Cir. 2019) (Plaintiff "must do more than state in conclusory fashion that the flawed outcome was the result of 'gender bias.'").

Additionally, were Plaintiff's argument accepted, it would collapse the two elements of an erroneous outcome claim into one.  If a plaintiff could satisfy the gender bias element by merely pleading that the decision was erroneous, the gender bias element would have no purpose.  But the requirement that a plaintiff actually plead evidence of a gender bias is essential to a Title IX claim.  *See Yusuf*, 35 F.3d at 715 ("[A]llegations of a procedurally or otherwise

---

[2] Plaintiff incorrectly asserts that this holding in *GMU* was addressing an equal protection clause claim.  *See* Opp. at 26.  While the court did hold that the plaintiff's allegations were insufficient to state an equal protection claim, the court also rejected the plaintiff's attempt to state an erroneous outcome claim based on this argument.  *See GMU*, 132 F. Supp. 3d at 732-33.

flawed proceeding that has led to an adverse and erroneous outcome combined with a conclusory allegations of gender discrimination is not sufficient to survive a motion to dismiss.").

Equally unavailing is Plaintiff's argument that "[g]ender bias can be inferred from the manner in which university officials treat a male Title IX respondent as compared to the female complainant(s)." Opp. at 21; *see also id.* at 23 (bullet point i) (asserting Dr. Hammat treated Plaintiff different than Complainants).[3] Again, *GMU* addressed this very argument: "even if one accepts that [the defendant] treated [the complainant] more favorably than he treated plaintiff, it does not necessarily—or even plausibly—follow that it was because plaintiff is a male. As one district court noted recently in a similar case, a number of lawful, independent goals could have motivated any disparate treatment. . . . And, in the absence of any specific factual allegations pointing to such a bias on the part of the defendants, it cannot be said that the discriminatory motive explanation is plausible rather than just conceivable." 132 F. Supp. 3d at 733. Additionally, as the court in *GMU* explained, "Title IX does not impose liability for disparate impact." *Id.* at 733.

Plaintiff also cannot satisfy the gender bias element based on his allegations of "pressure" Mason supposedly faced, a point that Plaintiff's brief all but concedes. Plaintiff admits that these allegations at most provide a "'backdrop' for gender bias." Opp. at 26. Plaintiff also does not contest or attempt to distinguish the long line of cases cited in Mason's opening brief which have found no basis to infer gender bias based on allegations about the Dear Colleague letters, government investigations, or public pressure to address sexual assault on campus. *See* Mot. at

---

[3] Plaintiff cites *Marymount* in support of this argument but there the court's finding that gender bias had been alleged was based solely on a statement by the adjudicator that indicated he believed men would always enjoy sexual contact regardless of whether it was consensual. 297 F. Supp. 3d at 587. It, therefore, provides no support for Plaintiff's argument.

16-17.[4]  The opposition simply relists the allegations made in the Complaint without providing a single argument for why these allegations demonstrate gender bias.  Plaintiff also has no substantive response to Mason's argument that to the extent public pressure is relevant, his allegations demonstrate that Mason faced equal if not greater public pressure to ensure a fair process for those accused of sexual assault.  *Id.* at 18-19.  Finally, Plaintiff has no response to Mason's argument that his own allegations about how Mason chose not to rescind its hiring of Justice Kavanaugh (a male accused of sexual assault) despite public pressure disproves his allegations of gender bias.  *Id.*  As Mason explained in its opening brief, and Plaintiff does not contest, Plaintiff's own allegations have pled him out of an erroneous outcome claim by demonstrating that Mason is not biased against males.  *Id.*

### C.  Plaintiff Has Not Plausibly Alleged that Gender Bias Was a Motivating Factor Behind the Finding in His Case.

Even assuming that Plaintiff had plausibly alleged that Dr. Hammat and Mr. Williams did harbor a gender bias (he has not), that would still be insufficient to plead an erroneous outcome claim.  To plausibly plead an erroneous claim, Plaintiff cannot merely plead the existence of gender bias, he must "allege particular circumstances suggesting that gender bias was a *motivating factor* behind the erroneous finding."  *Yusuf*, 35 F. 3d at 715 (emphasis added).  There must be a "causal connection" between the outcome and gender bias.  *Id.*  This is because Title IX, which is the statutory basis of an erroneous outcome claim, only "bars the imposition of university discipline where gender is a *motivating factor* in the decision to discipline."  *Id.* (emphasis added).  This is particularly the case in the Fourth Circuit where that court has held, in

---

[4] Plaintiff incorrectly claims that Mason has "conceded" that such allegations can provide a "backdrop" for gender bias.  Opp. at 27.  To the contrary, Mason's opening brief cited a litany of cases holding that these allegations provide no evidence of a gender bias.

the analogous Title VII context, that a plaintiff must plead facts that support a "reasonable inference that the decisionmakers were *motivated by bias*."  *McCleary-Evans v. Md. DOT*, 780 F.3d 582, 585-86 (4th Cir. 2015) (emphasis removed and added).[5]  Merely alleging that a decision was made because the "decisionmakers were biased is simply too conclusory," because "only speculation can fill the gaps."  *Id.*

Here, Plaintiff has failed to fill the gap between his allegations of gender bias and the outcome of his case; instead he asks the court to speculate that the reason Mason found Plaintiff responsible for Title IX violations is gender bias.  For example, there is no basis to infer that Dr. Hammat or Mr. Williams' decision in Plaintiff's case was motivated by gender bias based on one-off statements made years before Plaintiff's Title IX investigation and that have nothing to do with Plaintiff's case, or even sexual harassment claims.  Indeed, the Complaint only alleges that the assertions about the statements by Dr. Hammat and Mr. Williams and the pressure on Mason *"suggest* that gender bias was a motivating factor" in the outcome of his case.  Compl. ¶¶ 484 & 485 (emphasis added).  Merely suggesting the possibility that gender bias was a motivating factor—as Plaintiff states is the most his allegations do—does not meet the requirements of *Twombly* to plausibly allege that gender bias was a motivating factor.  *See McCleary-Evans*, 780 F.3d at 586 (allegations must be more than just "*consistent* with discrimination," they must "support a *reasonable inference* that the decisionmakers were motivated by bias").

---

[5] Courts look to Title VII law to interpret Title IX.  *See Yusuf*, 35 F.3d at 714; *see also Marymount*, 297 F. Supp. 3d at 581 n.9 (looking to *McCleary-Evans* to determine the correct standard of review for Title IX case).

Regardless of whether Plaintiff has properly alleged that Dr. Hammat or Mr. Williams have some gender bias (and again he has not), his claim cannot proceed without some allegation connecting the dots between the supposed gender bias and the outcome of his case.  That crucial "causal connection" is wholly lacking in Plaintiff's complaint.

## II.     PLAINTIFF HAS NOT PLAUSIBLY ALLEGED THAT THE OUTCOME OF HIS TITLE IX CASE WAS ERRONEOUS.

As in his complaint, Plaintiff's opposition again admits that most of the factual findings of Mason's Title IX investigation are correct.  He admits to repeatedly having conversations with graduate students about his own sexual experiences, their sexual experiences and pornographic preferences, and even visiting a strip club with graduate students where he "joked" about blackmailing a student with a photograph of her receiving a lap dance.  There is no question that Mason's conclusions that these events occurred are correct.

Having admitted to the conduct, Plaintiff's only argument is to ask this Court to second guess Mason's judgment that Plaintiff's admitted conduct constituted sexual harassment under Mason's sexual misconduct policies.  The Court should not do so.  *See Doe v. Wash. Univ.*, No. 19 CV 300, 2020 U.S. Dist. LEXIS 9525, at *48-51 (E.D. Mo. Jan. 21, 2020) (finding no allegation of articulable doubt about the outcome of a Title IX hearing based on university's credibility determination because such a judgement call was "fully within the purview of a university disciplinary hearing panel").  Plaintiff was found responsible for sexual harassment based on "repeated instances of sexual conversations and physical interactions with students [he] supervises and teaches which indicate a lack of appropriate professional boundaries and combine to create a hostile environment for students in the program."[6]  Mot. Ex. 5-8.  Having admitted in

---

[6] Plaintiff opens his opposition by arguing that Mason "misstates the standards applicable to sexual harassment claims."  Opp. at 7.  But Plaintiff's straw horse argument is responding to a

11

his complaint to "repeated instances of sexual conversations and physical interactions with students [he] supervises and teaches," Plaintiff cannot plausibly allege that Mason's determination was erroneous.[7]   As the OCR 2001 Guidance that Plaintiff is fond of citing states, "[i]n most cases, a hostile environment will exist if there is a pattern or practice of harassment." Opp. Ex. 1 at 6.

Nor has Plaintiff alleged a plausible basis to doubt the accuracy of the outcome based on "flaws in the process."  Opp. at 16.  As an initial matter, Plaintiff wrongly asserts that "[Mason] incorrectly presumes that in order to adequately plead a Title IX claim against a state university a plaintiff must plead a due process claim."  Opp. at 15 n.10.  Mason did not presume anything; it is Plaintiff's complaint that asserts that the process was flawed because he "was deprived of due process in all respects" and then lists the ways in which Plaintiff believes he was denied due process.  Compl. ¶ 483.  Mason was responding to Plaintiff's allegation that the process was flawed because he was denied due process; Plaintiff cannot change his allegations in his opposition.  Moreover, Plaintiff is wrong on the law.  In *Loh*, 2018 U.S. Dist. LEXIS 53619, at *25, the court relied on its findings that the plaintiff had received adequate due process to find that he had not "plausibly alleged a procedurally or otherwise flawed process."  Regardless,

---

statement in Mason's Factual Background section about what the Complainants alleged, not any argument that Mason made.   Regardless, Plaintiff is the one misstating the standard for sexual harassment under Mason's policy, which is all that Plaintiff has been found to have violated. Mason's sexual misconduct policy defines harassment as including conduct that interferes with another person's academic or work environment.  *See* Mot. Exs. 1A, 3A, 3C, 4A, 4C.

[7] Plaintiff's argument that he denied some of the findings is irrelevant because he was not found responsible for sexual harassment based on any single instance, but rather based on a pattern of behavior.

Mason argued in its opening brief both that Plaintiff was not denied due process and that there were no procedural irregularities. *See, e.g.*, Mot. at 23, 28.

Plaintiff cannot contest that he received notice which contained detailed descriptions of the allegations against him*, see* Mot. Ex. 1-4, that he had four opportunities to be heard (three interviews with Dr. Hammat and an appeal to Mr. Williams), and that he had the opportunity to present his side of the story both to Dr. Hammat and in his 38-page appeal to Mr. Williams, *see* Mot. at 24-25. Mason's opening brief also discussed in detail why Plaintiff's list of 26 supposed flaws in the process were either demonstrably false (based on incorporated documents) or conclusory allegations. Mot. at 25-28. Plaintiff's opposition abandons all but eight of his allegations, and for those eight he merely repeats the conclusory or incorrect allegations without responding to Mason's arguments. None demonstrate a procedurally flawed process, let alone plausibly allege a basis to doubt the outcome of Plaintiff's Title IX matter.

*First*, Plaintiff repeats his *ipse dixit* allegations that Dr. Hammat and Mr. Williams had a conflict of interest in deciding Plaintiff's case because they are also responsible for enforcing Mason's Title IX policy. But Plaintiff does not explain why those two roles are in conflict with each other. Nor could he because being responsible for enforcing the policy includes identifying and addressing violations of the policy. Likewise, Plaintiff's conclusory allegations that Dr. Hammat and Mr. Williams "exhibited bias" in their decision making is entitled to no weight, and, as demonstrated above, Plaintiff has failed to allege any facts that demonstrate either were actually biased. Nor has Mason admitted, tentatively or otherwise, that Dr. Hammat or Mr. Williams are biased. *See, e.g.,* Mot. at 9-10 ("Plaintiff's allegations, however, do not even demonstrate that Dr. Hammat or Mr. Williams are biased against perpetrators of sexual misconduct."). Also, as discussed above, Plaintiff cannot plausibly plead bias by alleging

disagreement with how Dr. Hammat or Mr. Williams weighed the evidence or handled the investigation. *GMU*, 132 F. Supp. 3d at 733 ("[I]n the absence of any specific factual allegations pointing to such a bias on the part of the defendants, it cannot be said that the discriminatory motive explanation is plausible rather than just conceivable."); *see also Doe v. Univ. of Arkansas-Fayetteville*, No. 18-CV-05182, 2019 U.S. Dist. LEXIS 57889, at *40-41 (W.D. Ark. Apr. 3, 2019) ("credibility determination" by hearing panel not a basis to "allege articulable doubt on the accuracy of the hearing panel outcome"). To the contrary, "there is a presumption that government officials can and will decide particular controversies conscientiously and fairly." *Boston v. Webb*, 783 F.2d 1163, 1166 (4th Cir. 1986).[8]

*Second*, Plaintiff's allegations about the Complainants' motives are (1) completely conclusory, *see, e.g.,* Compl. ¶ 378, (2) irrelevant given that Plaintiff corroborated most of their allegations against him, and (3) not a procedural defect.

*Third*, Plaintiff continues to misread Mason's policies which do not prohibit investigating allegations that that are filed more than 180 days after the incident. *See* Mot. at 26. It is Plaintiff who is ignoring the plain language of the policy which is permissive and does not preclude Mason from investigating older allegations (or allegations filed by students after they have graduated). Additionally, Plaintiff cannot satisfy his pleading requirement by alleging a mere technical violation of Mason's policies. Rather, he must allege a procedural flaw that plausibly casts doubt on the outcome of the proceeding. *See Yusuf*, 35 F.3d at 715 (requiring "procedural

---

[8] Plaintiff's reliance on *Doe v. Columbia*, 831 F.3d 46 (2d Cir. 2016) is misplaced because the court in that case applied the *McDonnell Douglas* lower pleading standard, *i.e.*, that the "alleged facts need support only a minimal inference of bias," instead of the *Twombly* plausibility standard. As the court in *Marymount* found, this lower pleading standard is incompatible with *McCleary-Evans*, and the Fourth Circuit would require a Title IX complaint to meet the *Twombly* plausibility standard. *Marymount*, 297 F. Supp. 3d at 581 n.9.

flaw affecting the proof"). Whether or not Mason technically followed its policy regarding the time limit for complaints does not cast any doubt on Mason's conclusions.

*Fourth*, Plaintiff's assertion that the notices he received from Dr. Hammat "noted only that potential violations of varying sexual misconduct policies had been alleged," Opp. at 18, is demonstrably false. The Court has before it the notices that Plaintiff received, Mot. Ex. 1-4, which clearly show that Plaintiff was told in detail what the allegations against him were and that he was being investigated for violating Mason's sexual misconduct policy. *See Linton v. Frederick Cnty. Bd. of Cnty. Comm'rs.*, 964 F.2d 1436, 1439 (4th Cir. 1992) ("Notice is sufficient [ ] if it apprises the vulnerable party of the nature of the charges and general evidence against him."). Additionally the notices provided Plaintiff with all of the applicable policies and procedures; if Plaintiff was truly confused about what policies and procedures applied he could have asked Dr. Hammat either by email or during any of his three interviews with her. Similarly, Plaintiff's argument that the notices did not identify the specific policy provisions is disingenuous at best. Given the allegations, there would have been no reason for Plaintiff to believe he was being investigated for any of the other conduct prohibited by Mason's policies such as sexual assault, domestic violence, or stalking. And again, if Plaintiff was actually confused by this, he could have asked for clarification.

Moreover, that the Letters of Determination described the findings differently than how the notices described the allegations, is not a procedural flaw. That is the very purpose of an investigation, to determine which of the allegations are correct and whether there is any additional relevant information. Plaintiff certainly had notice of the "nature of the charges" against him, i.e., inappropriate sexual conversations with graduate students, and was able to respond to that charge. *Id.* And to the extent that Plaintiff was truly unable to respond to any

allegation during the investigation, he was aware of all of the findings before filing his appeal and had an opportunity to address them in his 36-page appeal.  Indeed, the Complaint admits that Plaintiff did respond to these supposedly "new" allegations in his appeal.  *See* Compl. ¶ 372 ("Plaintiff submitted new evidence on appeal that refuted the findings made in the Letters of Determination, a number of which were based on allegations of which Plaintiff had no notice as they appeared in the Letters of Determination for the first time."); *see also id.* ¶¶ 321, 323, & 365 (explaining response on appeal to supposed "new" findings).

The Complaint demonstrates that Plaintiff did have an opportunity to respond to each of the findings against him before a final decision was made or any sanctions were imposed, and it identifies no argument that Plaintiff was unable to make because of lack of notice.  As such, Plaintiff cannot claim a procedural defect based on lack of notice.  *Loh*, 2018 U.S. Dist. LEXIS 53619, at *20, (rejecting inadequate notice argument where "Complaint and the incorporated attachments show that [plaintiff] presented to [the hearing officer] all of the arguments and defenses of which he now claims to have been deprived").

*Fifth*, Plaintiff continues to assert a flawed process because he was not given access to "all of the evidence gathered during the Title IX investigation," but he does not dispute that "[d]ue process does not mandate that all evidence on a charge or even the documentary evidence be provided, only that such descriptive explanation be afforded as to permit [plaintiff] to identify the conduct giving rise to the dismissal and thereby enable him to make a response."  *Linton*, 964 F.2d at 1440.  Again, Plaintiff was given a detailed description of the allegations against him in the notices.  That notice was sufficient for Plaintiff to compile "a list of witnesses," "over 150 pages" of documents, and prepare to respond to the allegations during his interviews.  Compl. ¶¶ 153-54; Mot. at 25 (citing allegations in complaint showing Plaintiff had opportunity to and did

respond to allegations during meetings with Dr. Hammat).  There was no requirement that Mason provide Plaintiff with all of the information from the investigation.

*Sixth*, Plaintiff reasserts that he was not given an opportunity to cross examine, but does not contest that he had no right to cross examine his accusers in an academic or employee discipline matter.[9]  *See Butler v. Rector & Bd. of Visitors of the College of William & Mary*, 121 Fed. Appx. 515, 520 (4th Cir. 2005) (no right of cross examination in academic context).  Plaintiff's argument, if accepted, would turn every employee discipline matter into a mini-trial.

*Seventh*, Plaintiff continues to argue that he was not provided with a hearing, despite his own Complaint admitting that (1) he had four opportunities to be heard before a final decision was made and (2) that he was able to share his side of the story and respond to the allegations.  *See* Mot. at 25, *see also Loh*, 2018 U.S. Dist. LEXIS 53619, at *20.  Plaintiff's arguments for why the four hearings he received were inadequate have already been addressed above.

*Finally,* Plaintiff argues that Dr. Hammat did not apply the preponderance of the evidence standard but his only basis for this conclusory assertion is that he disagrees with the way Dr. Hammat weighed the evidence.  *See* Opp. at 20.  That Plaintiff would have weighed the evidence differently is not a basis to plausibly allege that Dr. Hammat did not apply the preponderance of the evidence standard.  Moreover, even if Plaintiff were correct, it would not matter because he had the opportunity to and did appeal Dr. Hammat's decision to Mr. Williams.  Plaintiff does not allege that Mr. Williams, the final arbiter of whether Plaintiff would be held responsible, failed to apply the preponderance of the evidence standard.

---

[9] Plaintiff's reliance on *Marymount* to support this argument is again misplaced.  The Court in *Marymount* merely noted that one of the plaintiff's alleged procedural flaws was that he was not allowed the opportunity to cross examine.  The court did not state one way or another whether it agreed that the lack of cross examination specifically was a procedural flaw.

\*   \*   \*

In order to state an erroneous outcome claim, Plaintiff must have alleged some fact that makes it plausible that the outcome of his Title IX matter was erroneous.  While some courts have set the bar to pleading this element low, those courts have not been true to the requirements of *Twombly* that a plaintiff must plausibly plead each element of his claim.  Moreover, allowing erroneous outcome claims to proceed based on the mere possibility that the outcome was incorrect, undercuts the ability of universities to address sexual misconduct on campuses. Pleading disagreement with the outcome, identifying evidence that could have been weighed differently, or identifying procedural issues that did not impact a plaintiff's ability to respond to the allegations against him, might suggest a *possibility* that the outcome was erroneous, but they do not make it *plausible*.  This is especially the case here, where Plaintiff has admitted to most of the conduct and has admitted that he received numerous opportunities to and did respond to the allegations against him.  *See Yusuf*, 35 F.3d at 715. ("If no such doubt exists based on the record before the disciplinary tribunal, the claim must fail.").  Holding Plaintiff to the requirements of *Twombly*, he has not plausibly alleged that the outcome of his case was erroneous.

### III.   THE SELECTIVE ENFORCEMENT CLAIM MUST BE DISMISSED.

Plaintiff does not contest that in order to plead a selective enforcement claim he must plead a valid female comparator.  Nor does he contest that he has failed to do so.  Instead he argues that his claim should be allowed to proceed based on "information and belief" allegations that merely state the elements of a selective enforcement claim.  But "a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Carter v. Va. Dep't of Game & Inland Fisheries*, No. 16cv661, 2018 U.S. Dist.

LEXIS 126328, at *19-20 (E.D. Va. July 27, 2018) (information and belief allegations that are "unsupportable conclusory talismanic statements" are insufficient to state a claim).

The problem with Plaintiff's allegations are not that they are on "information and belief," it is the generic and conclusory nature of the allegations. "If Plaintiff has 'information' supporting [his] allegation[s], he must provide enough to nudge his Complaint over the plausibility threshold; asserting mere 'belief' is exactly what the Supreme Court rejected in *Twombly* and *Iqbal*." *Turner v. Va. Dep't of Med. Assist. Servs.*, 230 F. Supp. 3d 498, 510 (W.D. Va. 2017). For Plaintiff to have made his information and belief allegations in good faith, he must actually be aware, albeit based on second-hand information, of some female faculty member who was treated differently than him. Otherwise, Plaintiff is not pleading on information and belief, he is merely speculating (and not complying with Rule 8 or Rule 11). *See Carter*, 2018 U.S. Dist. LEXIS 126328, at *19-20 (rejecting claim based solely on information and belief allegations where plaintiff did not identify "sources of second-hand information giving rise to any probable inference to support" the allegations); *Verfuerth v. Orion Energy Sys.*, 65 F. Supp. 3d 640, 647 (E.D. Wisc. 2014) (explaining that phrase '"information and belief' comes straight out of Rule 11" and rejecting claim pled on information and belief because plaintiff had not explained "why such a claim might be likely to have evidentiary support at some time"). Information and belief allegations are "not a license to undertake a fishing expedition." *Id.* at 647.

In order to state a selective enforcement claim, Plaintiff must plead—on "information and belief" or otherwise—some specific valid female comparator. If Plaintiff truly has some "information" to support his generic allegations, that should not be difficult.

19

**CONCLUSION**

For the reasons stated herein and in Mason's opening brief, Plaintiff's Title IX claims against Mason (Count I) should be dismissed with prejudice.


February 5, 2020                    RESPECTFULLY SUBMITTED


                                   _____/s/_____
                                   Eli S. Schlam, Asst. Atty. Gen.
                                   Virginia Bar Number 92987
                                   George Mason University
                                   4400 University Drive,
                                   MS 2A3
                                   Fairfax, VA 22030
                                   Phone: (703) 993-2619
                                   Fax: (703) 993-2340
                                   eschlam@gmu.edu

                                   *Attorney for The Rector & Visitors of George Mason University*

CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of February, 2020, I will electronically file the

foregoing with the Clerk of the Court using the CM/ECF system, which will then send a

notification of such filing (NEF) to counsel of record in this case.

_____/s/_____
Eli S. Schlam, Asst. Atty. Gen.
Virginia Bar Number 92987
George Mason University
4400 University Drive,
MS 2A3
Fairfax, VA 22030
Phone: (703) 993-2619
Fax: (703) 993-2340
eschlam@gmu.edu