**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| | ) | |
| v. | ) | Civil Action No.: 1:19-cv-01249 |
| | ) | |
| GEORGE MASON UNIVERSITY, *et al.* | ) | |
| | ) | |
| | ) | |
| *Defendants*. | ) | |

**REPLY BRIEF IN SUPPORT OF DEFENDANTS JENNIFER HAMMAT, JULIAN
WILLIAMS, KEITH RENSHAW, ANN ARDIS, AND S. DAVID WU'S
<u>MOTION TO DISMISS COUNTS II-IV</u>**

Plaintiff's remaining claims against the Individual Defendants must be dismissed. Plaintiff does not dispute that he remains a tenured full professor at Mason. He, therefore, cannot assert that he has been deprived of the sole property interest he has alleged, his tenured position. Plaintiff has no property interest in mentoring graduate students or being part of a program within his department. Similarly, Plaintiff cannot allege a deprivation of a liberty interest because he has not been terminated or demoted nor have the charges against Plaintiff been published to potential employers. Plaintiff's due process claim also fails because (1) an employee who has not been terminated is not entitled to notice and a hearing and (2) to the extent that minimum due process was required, Plaintiff received it both in his Title IX matter and in the faculty grievance matter.[1] Finally, Plaintiff's First Amendment claim fails because his sharing of personal sexual experiences in his role as a university faculty member is not protected speech.

## I.    PLAINTIFF'S DUE PROCESS CLAIMS MUST BE DISMISSED.

### A.  Plaintiff Was Not Deprived of a Constitutionally Protected Property Interest.

Plaintiff does not dispute that the only "property interest" he has alleged is his "tenured position as a full professor." Compl. ¶ 502. Nor does he dispute that he continues to be a tenured full professor at Mason and receive the full salary due under his employment contract. He, therefore, has not been deprived of the sole property interest alleged in his complaint.

---

[1] Plaintiff's brief concedes that he has not stated a due process claim against Provost Wu or Dean Ardis. *See* Opp. at 5 n.1. Despite conceding that he has not alleged any due process violations by these defendants, Plaintiff seeks to maintain his claims against them in their official capacity. Having failed to allege that either of these individuals violated his due process rights in their personal or official capacity, the claims against them must be dismissed. Additionally, Plaintiff's contention that these individuals may be necessary to effectuate any injunctive relief is incorrect. If the Court were to order injunctive relief in favor of Plaintiff, Mason would comply regardless of whether Dean Ardis or Provost Wu remain defendants in their official capacity.

Plaintiff incorrectly claims that there is no "bright line rule in this Circuit that *requires* that a public employee be terminated in order to plausibly allege a deprivation of his or her property interest in continuing employment." Opp. at 6. The Fourth Circuit drew that bright line in *Huang v. Bd. of Govs. of Univ. of N.C.*, 902 F.2d 1134, 1141 (4th Cir. 1990) where the court held that it was "beyond dispute" that a professor who "remained a tenured professor in the University at the same or effectively greater salary" had not be "deprived of [his property] right" in his tenured position.

Plaintiff's attempts to dispute this bright line rule based on district court cases are all unavailing. In each of the cases cited by Plaintiff, the court identified a property right *other than tenured employment* that the plaintiff was denied. In *Garner v. Steger*, 69 F. Supp. 3d 581 (W.D. Va. 2014) the plaintiff was both demoted from "executive director" to a "position that reports to the executive director" and lost "a $500,000 annual laboratory subsidy" that was provided for in his contract. *Id.* at 585, 591. Based on specific provisions in Virginia Tech's faculty handbook, the court held that it was "at least plausible that Garner had a property interest in his position as Executive Director." *Id.* at 591. The property interest in *Garner* was not in remaining a tenured professor; it was in remaining the Executive Director, a role from which Garner was undeniably terminated. In *Willis v. City of Va. Beach*, 90 F. Supp. 3d 597 (E.D. Va. 2015) and *Wilkinson v. School Bd. Of Cnty. of Henrico*, 566 F. Supp. 766 (E.D. Va. 1983) the court found that state statutes created a property right in not being suspended for the specific types of employees at issue (police officer and teacher), which the plaintiffs were deprived of when they were suspended. *See* 90 F. Supp. 3d at 613; 566 F. Supp. at 769.[2] These cases, along with *Huang*, all

---

[2] *Ridpath v. Board of Gov. Marshall Univ.*, 447 F. 3d 292 (4th Cir. 2006), is completely inapposite because the plaintiff there only alleged a liberty interest.

stand for the common sense principal that whatever property right a plaintiff has, in order to state

a due process claim he must have lost it.  Again, Plaintiff concedes that he has not been deprived

of the sole property right alleged, his tenured full professor position.  As in *Huang*, this

forecloses Plaintiff's due process claim based on a property interest.[3]

Plaintiff also does not dispute that he has no property interest in the only things he has

lost temporarily:[4]  membership in a program within Mason's Psychology Department, the ability

to mentor graduate students who are part of that program, the ability to teach graduate courses,

and (allegedly)[5] eligibility for salary increases.  Plaintiff may have a desire to retain these

privileges, but he has not identified anything in his contract, the Faculty Handbook, or anything

else that gives him a property right to be part of a particular program, mentor graduate students,

---

[3] Even if Plaintiff were correct that something less than termination could give rise to a property interest, the cases he cites would still not support his claim because unlike the plaintiffs in those cases he has not been transferred to a new department, been demoted, lost a title, or been suspended.  Similarly, the out of circuit decision in *Winegar v. Des Moines Indep. Cmty. Sch. Dist.*, 20 F. 3d 895 (8th Cir. 1994), also does not help Plaintiff.  There, the plaintiff was transferred to a new school.  Moreover, in *Huang*, the faculty member was transferred to a new school and the Fourth Circuit still held that there was no deprivation of a due process right.  Therefore, in this circuit a transfer is not sufficient to invoke the due process clause.

[4] Plaintiff spends much of his opposition speculating that the probationary period *might* be extended beyond four semesters.  But Plaintiff's speculation about what might happen in the future cannot be credited on a motion to dismiss.  The only *fact* regarding the duration of his probation that Plaintiff can plead is that it is scheduled to end after the Summer 2021 semester.  Plaintiff also speculates that he may receive poor evaluations in the future because of his inability to mentor graduate students.  These assertions regarding evaluations do not appear in the Complaint and are therefore not properly before the Court.  Even if they were alleged in the Complaint, they would be conclusory allegations based on Plaintiff's speculation about possible future events and would be entitled to no weight.

[5] In addition to being irrelevant, *see infra*, Plaintiff's assertion that he did not receive a raise and is not eligible to receive a raise is false.  Plaintiff received a 3% raise in the summer of 2019.  While the Court must credit Plaintiff's allegations, he is once again making assertions that cannot be reconciled with Rule 11.  Additionally, Plaintiff's claims about whether he will receive future salary increases is speculative and need not be credited by the Court.

teach graduate courses, or receive salary increases.  "To have a property interest . . ., a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it."  *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972).  Moreover, as explained in the Individual Defendant's opening brief, Plaintiff's contract explicitly demonstrates that Plaintiff does not have a property interest in being part of any particular program or department or any particular job duty.  *See* Mot. Ex. 5 ("The University reserves the right to change your assignment, as well as your physical location, at any time during your employment, and you may be reassigned duties as determined by the University.").

Plaintiff's only argument appears to be that the sanctions, specifically losing the ability to work with graduate students in conducting research, will somehow prevent him from fulfilling his role as a faculty member.  *See* Opp. at 12 ("professor's inability to utilize graduate students to conduct research can hobble a given project and result in a loss of funding"); *id*. at 14 (asserting that he is "no longer effectively employed" because of sanctions).  This argument fails for a number of reasons.  *First*, the underlying premise of this argument is wrong; Plaintiff still has the ability to work with graduate students in conducting his research.  Under the sanctions imposed in the Title IX matter, Plaintiff was able to continue to mentor and supervise students he was currently working with if they chose to continue to work with him.  Mot. Ex. 1.  Additionally those sanctions did not prohibit Plaintiff from having other graduate students work in his lab, just that he could not serve as their mentor or supervisor.  When Plaintiff was disaffiliated from his program, he could still work with graduate students.  Dr. Renshaw's letter to Plaintiff regarding his disaffiliation from the program clearly states:  "Please note these changes do *not* prohibit doctoral students in the [  ] program from working with you on non-related program research,

nor do they prohibit such students from electing to work for you as Graduate Research

Assistants, if you have independent funding for them."  Opp. Ex. G at 4.  Additionally, Plaintiff

does not, and could not, allege that he is barred from conducting research with graduate students

from other programs or departments.[6]  *Second*, nothing prevents Plaintiff from conducting

research with undergraduates, post-doctoral students, or fellow faculty members.  While it might

be more difficult for Plaintiff to conduct research without the "middle management" Plaintiff

asserts is provided by graduate students, that Plaintiff (the "CEO") may have to work harder to

complete his research does not create a due process claim.  *Third*, as demonstrated in the

Individual Defendants' opening brief, conducting research with graduate students is just one

small part of Plaintiff's job responsibilities as a faculty member.  Mot. at 9-10.  Therefore,

Plaintiff's conclusory assertion that he is no longer "effectively employed" and his hyperbolic

assertion that he has been "stripp[ed] of every meaningful aspect of his professorship" is

demonstrably false on the face of the Complaint.

 *Finally*, even if the Court were to accept Plaintiff's argument that the sanctions have

"effectively prevented Plaintiff from fulfilling his duties as a full professor," Compl. ¶ 394, his

claim would still fail under *Royster v. Board of Trustees*, 774 F.2d 618 (4th Cir, 1985).  In

*Royster*, the Fourth Circuit held that a public employee who retained his job and salary but was

relieved of all of his duties was not deprived of a property interest.  *Royster* forecloses Plaintiff's

argument because a public employee has no property interest in "actively engag[ing] in and

execut[ing] the duties of his office."  *Id.* at 621.  The Fourth Circuit reaffirmed this holding in

---

 [6] Plaintiff's allegation that "the only students who have shown interest in Plaintiff's
research at GMU are in the program" is irrelevant.  That Plaintiff might have to identify students
from other departments interested in his research does not create a due process right.

*Hibbits v. Buchanan Cnty. Sch. Bd.*, 433 Fed. Appx. 203, 206 (4th Cir. 2011), a case relied on by Plaintiff, where it reiterated that "the Fourteenth Amendment's due process right to property does not guarantee a right to a particular job, or the right to perform particular services."

Plaintiff attempts to distinguish *Royster* by asserting that he is a tenured employee, but this is irrelevant.  The plaintiff in *Royster* also had a contractual right to his employment; the question was whether a property right in employment included the right to perform the duties of the job.  Likewise, Plaintiff's allegation that he "has been deprived of salary increases," Opp. at 14, is irrelevant.  *Royster* held that the due process right of employment was "satisfied by payment of the full compensation due under the contract."  *Id.*; *see also Fields v. Durham*, 909 F.2d 94, 98 (4th Cir. 1990).  Plaintiff does not allege that he has been deprived of the full compensation due to him under his contract, and he identifies nothing that gives him a property right to salary increases.  To the contrary, Plaintiff alleges that he is not eligible for "merit-based pay raises," Compl. ¶ 399, which by definition are discretionary and not something to which Plaintiff is entitled.

The Fourth Circuit's holdings in *Huang* and *Royster* foreclose Plaintiff's claim that he has been deprived of a property interest because of restrictions Mason has put on his ability to work with graduate students.  To allow Plaintiff's claim to proceed would create a due process claim every time an employer places a restriction or limitation on an employee.  As the *Royster* Court recognized that would "make it impossible for a public employer, dissatisfied with an employee's performance, but without specific contractual cause to discharge him, to relieve the employee from his duties although willing to compensate the employee in full."  774 F.2d at 721.  It would also be directly contrary to the Supreme Court's long standing instruction that "[t]he

6

federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies." *Bishop v. Wood*, 426 U.S. 341, 349 (1976).

Before the sanctions and disaffiliation from the program, Plaintiff was a tenured full professor. After the sanctions and disaffiliation, Plaintiff remains a tenured full professor. He has not been deprived of any constitutionally protected property right.

### B. Plaintiff Has Not Been Deprived of a Liberty Interest.

Plaintiff's arguments that he has been deprived of a liberty interest fail as well. Plaintiff does not dispute that "for a liberty interest to have been implicated, some damage to [plaintiff's] employment status must have resulted from publication of the reasons for his demotion." *Johnson v. Morris*, 903 F.2d 996, 999 (4th Cir. 1990). Here, Plaintiff has not been terminated or demoted and therefore cannot state a liberty interest claim. Plaintiff tries to argue that he has been "demoted," yet he still has the same job, with the same title and tenure, in the same department, and will earn the same salary. Plaintiff's situation is nothing like that of the plaintiffs in *Ridpath*, *Miller*, or *Hall*. In *Ridpath*, the court found that the plaintiff's transfer from head of compliance for the athletic department to a position in student judicial affairs was a demotion because it was both a "dramatic change of status" and he was "completely excluded from his chosen field of intercollegiate athletic administration." 447 F.3d at 311. Similarly in *Miller v. Hamm*, No. CCB-10-243, 2011 U.S. Dist. LEXIS 141 (D. Md. Jan. 3, 2011), the plaintiff, a police helicopter pilot, was transferred from the aviation division to the lower paid harbor foot patrol, which "excluded him from his chosen career—flying helicopters for law enforcement." *Id.* at *8, *36. In *Hall v. City of Newport News*, 469 Fed. Appx. 259 (4th Cir. 2012), the plaintiff was stripped of his police position (including "the police power to make stops, issue summons and warrants, and make arrests") and was put in a civilian position in the

records bureau, thus "exclude[ing] him from his trade or calling as a police officer." *Id.* 262-63.

In each of those cases, the court found there was a demotion because the plaintiff was reassigned

to a position outside his field of choice.

Plaintiff, on the other hand, has not been reassigned at all, let alone to a position outside

his field of choice:  he remains a tenured full professor of Psychology able to teach and perform

research in his chosen field.[7]  Indeed, in *Garner*, a case Plaintiff cites repeatedly, the court found

that the plaintiff could not plausibly state a liberty interest claim because he "remain[ed]

employed in the same field."  69 F. Supp. 3d at 595.  The court also rejected the argument,

identical to the one that Plaintiff makes here, that the loss of funding and certain aspects of his

responsibilities meant that he had been "demoted" or that he was "excluded . . . from his trade or

calling as a professor [and] scientific researcher."  *Id.*; *see also Echtenkamp v. Loudon Cnty.*

*Pub. Schs.*, 263 F. Supp. 2d 1043, 1057 (E.D. Va. 2003) (no liberty interest claim where plaintiff

was put on a probationary period during which restrictions were placed on her and she was

subject to increased supervision).  Plaintiff's own case demonstrates that he has no liberty

interest claim.

Even if Plaintiff had pled a demotion, his liberty interest claim would still fail because he

has not alleged publication to potential employers or the general public.  *See Sciolino v. City of*

*Newport News*, 480 F.3d 642, 650 (4th Cir. 2007) (requiring that potential employers are likely

---

[7] Plaintiff only argues that his disassociation from the program constitutes a demotion. *See* Opp. at 16.  He does not argue that the sanctions Dr. Renshaw imposed on him at the conclusion of the Title IX case constitute a demotion (nor could he).  As such, if the Court were to find that Plaintiff has plausibly pled a deprivation of a liberty interest based on the disaffiliation, the due process analysis would be limited to whether Plaintiff received due process during the faculty grievance process that resulted in his disaffiliation.  Plaintiff has not alleged that Dr. Hammat or Mr. Williams had any role in that process, and therefore Plaintiff's due process claims against them would need to be dismissed.

to learn of charges against plaintiff).  Again the cases that Plaintiff cites do not help his case.  In
*Garner*, the plaintiff alleged that the reason for his transfer became known by "the leaders of
other institutions of higher learning," i.e., plaintiff's "prospective employers."  69 F. Supp. 3d at
593.  Plaintiff, here, has not alleged publication to any other institution of higher education or
any other potential employer.  Regardless, the court in *Garner* explicitly stated that it was
**assuming but not deciding** that publication occurred.  *Id.* ("[T]he court will assume without
deciding that he has sufficiently pled the first, second, and fourth elements of the stigma plus
test").  Therefore *Garner* provides no support for Plaintiff's claim.  Plaintiff's citation to *Cannon
v. Village of Bald Head Island*¸ 891 F.3d 489, 503 (4th Cir. 2018), conveniently fails to mention
that the employer there not only emailed all employees but also **sent the discharge letters to the
media**.  Plaintiff has not alleged any disclosure to the general public or to any potential
employers; instead he has only pled that disclosures were made internal to Mason.  *See* Compl.
¶¶ 503-10.  As explained in the Individual Defendant's opening brief, "statements and comments
made only in internal memoranda, during private conversations, and at meetings not attended by
the general public" are insufficient to demonstrate public disclosure.  *See Willis*, 90 F. Supp. 3d
at 617; *Echtenkamp*, 263 F. Supp. 2d at 1056 (same).

Not only has Plaintiff not pled that there has been a publication, he has failed to allege, as
required by *Sciolino*, that the "stigmatizing charges [ ] are likely to be inspected by prospective
employers."  480 F.3d at 649.  He has not pled that Mason has a practice of releasing personnel
information to all employers or that Mason would release it to an employer to which he intends
to apply.  *See id*.  Without such allegations, Plaintiff cannot state a liberty interest claim.  Nor
could Plaintiff make such allegations consistent with Rule 11 because of DHRM Policy 6.05
which prohibits the disclosure of personnel information to third parties.  It does not help

Plaintiff's claim that the policy allows supervisors, high level managers, and companies

providing services to the state (e.g. "health benefits, life insurance, Worker's Compensation") to

view personnel records without the employees consent and that the records could be turned over

in response to subpoenas or court orders, because none of those exceptions permit disclosure to

potential employers of Plaintiff.  Nor is it Defendants' responsibility to provide "insight into

their actual practices," for disclosing personnel information; it is Plaintiff's burden to plead that

Mason has a practice of disclosing personnel information to his prospective employers.[8]

Plaintiff's complaint does not plead publication.

Finally, Plaintiff cannot state a liberty interest claim based on allegations that the

sanctions imposed or his disaffiliation from the program (as opposed to the disclosure of the

findings against him) were disclosed, *see, e.g.,* Compl. ¶ 506, Opp. at 17 n.10.  First, a liberty

interest is only implicated when the "charges" against a public employee are made public.

*Sciolino*, 480 F.3d at 646; *see also Johnson*, 903 F.2d at 999 (requiring "publication of the

*reasons* for his demotion") (emphasis added).  Disclosure of the sanctions imposed on Plaintiff

or that he has been disaffiliated from the program does not reveal the charges against him.

Second, for a statement to implicate a liberty interest it must be false.  *Sciolino*, 480 F.3d at 646.

Plaintiff does not, and cannot, allege that it is false that he has been sanctioned or that he has

---

[8] Plaintiff's reliance on *Sciolino* to support his argument ignores that the applicable policy there permitted the employer to "reveal[ ] the employee's 'reason for leaving' the department" and the employer admitted that it did disclose personnel information to requesting employers in certain circumstances.  *Id.* at 647 n.3.  Plaintiff has made no such allegations here. Plaintiff's reliance on *Doe v. Rector & Visitors of George Mason University*, 149 F. Supp. 3d 602 (E.D. Va. 2016) ("*GMU*") is also misplaced.  That case involved a student who was expelled for sexual misconduct.  The court found sufficient publication because the student's transcript, which would "routinely" be requested by potential employers, bore "a notation that he was the subject of a non-academic expulsion."  *Id.* at 614.  Plaintiff has not identified a similar notation in his personnel record that will be routinely requested by prospective employers nor has he alleged that Mason would provide that notation to the employers.

been disaffiliated from the program. In *Miller*, a case cited by Plaintiff, the court found that the plaintiff could not assert a liberty interest based on the statement that he had resigned while under investigation, because it was not false. 2011 U.S. Dist. LEXIS 141, at *37-38 (rejecting argument that liberty interest can be based on "innuendo, where the underlying statement is true"). As such, Plaintiff cannot state a liberty claim based on disclosures that only state what sanctions Plaintiff received or that he has been disaffiliated.[9]

### C. Plaintiff Received Sufficient Due Process.

Even if Plaintiff pled a property or liberty interest, his due process claim would still fail. As discussed in the Individual Defendant's opening brief, because Plaintiff was not terminated, he was not entitled to the due process of a notice and hearing required by *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). The Supreme Court has been explicit that it has not "decide[d] whether the protections of the Due Process Clause extend to discipline of tenured public employees short of termination." *Gilbert v. Homar*, 520 U.S. 924, 929 (1997). In *Echtenkamp*, 263 F. Supp. 2d at 1056, the court recognized that "the minimum process [plaintiff] must be provided to satisfy the Due Process Clause is notice and a hearing before she is terminated" and that because the plaintiff there had not been terminated, she could not "allege that she had been denied such process." Nor does *Hibbits* suggest otherwise as Plaintiff contends; to the contrary, it supports the Individual Defendant's position. The language Plaintiff

---

[9] For these reasons, Plaintiff's allegation that Mason disclosed the "sanctions imposed" on Plaintiff to the Complainants cannot be a basis for a liberty interest claim. Compl. ¶ 506. Additionally, Mason is required to make this disclosure by the federal Title IX regulations. It would put Mason (and every other university) in an impossible Catch-22 if this mandated disclosure could be used against the university to plead a due process claim. Moreover, such disclosure is not to employers. Therefore, it could not constitute publication under *Sciolino*. Respectfully, the language in *GMU* suggesting the disclosure to a Title IX complainant could constitute publication is wrong.

quotes confirms that "[t]he only process guaranteed by the Constitution is notice and a hearing before termination or deprivation of the protected property right." 433 Fed. Appx. at 205.  As discussed above, Plaintiff has not pled any protected property right other than his employment. Additionally, in *Hibbits*, the Fourth Circuit **affirmed** the district court's decision that the employees who had been placed on probation, but not terminated, could not state a due process claim.[10]  Therefore, even under the case cited by Plaintiff, he was not entitled to the minimum constitutional due process of a notice and hearing.

Assuming, *arguendo*, that Plaintiff was entitled to notice and a hearing, Plaintiff's own allegations demonstrate that he received that due process.  As an initial matter, Plaintiff's brief conflates two distinct processes that must be separated for the due process inquiry.   One process is the Title IX investigation and sanction ("Title IX process"), which involved Dr. Hammat, Mr. Williams, and Dr. Renshaw and resulted in only the sanctions listed in Dr. Renshaw's May 31, 2019 letter.  *See* Mot. Ex. 1.  The second process was the faculty grievance process ("Grievance Process") which involved a decision by the faculty grievance committee against Plaintiff and Dr. Renshaw and resulted in Plaintiff's disaffiliation from the program.  To the extent that the Court reaches the question of whether Plaintiff received adequate due process, it is important to analyze these processes separately because (1) Plaintiff's due process claims are against

---

[10] Plaintiff's citation to *Willis* is misplaced for several reasons.  First, the court did not say that notice and hearing are required in all circumstances, rather it said that if a plaintiff pleads a deprivation of a constitutionally protected right "then the court must determine what process is due and whether it was provided." 90 F. Supp. 3d at 613.  Second, as discussed above, *Willis* involved a state statute that created a property right for police officers in not being suspended, which they were denied.  That statute also "set[] forth the procedures which must be followed prior to . . . suspending" a police officer, which included notice and a hearing. *Id.*  No such statute is implicated here, and, therefore, to the extent *Willis* can be read to require notice and a hearing in a non-termination situation, it is inapposite.

individual defendants, and Dr. Hammat and Mr. Williams played no role in the Grievance

Process and (2) each process resulted in different sanctions and the Court only needs to analyze

each process if it concludes that the sanction resulting from that process deprived Plaintiff of a

protected interest.

1.   Plaintiff Received Due Process During the Grievance Process.

Plaintiff's allegations demonstrate that he received notice and a hearing during the

Grievance Process.  The notice Plaintiff received from the grievance committee contained the

full grievance filed against him and notified him that he had fifteen days to submit a written

response.  *See* Mot. Ex. 3.  Additionally, Plaintiff has not identified anything that Dr. Renshaw,

the only remaining defendant involved in the Grievance Process, did that deprived him of due

process.  Nor could he because Dr. Renshaw was a ***respondent*** in the Grievance Process along

with Plaintiff.   The only thing Plaintiff argues Dr. Renshaw did was follow the recommendation

of the Grievance Committee and the instruction of his Dean.  *See* Opp. at 25.  Finally, none of

Plaintiff's attempts to argue that Dr. Renshaw was biased, *id.* at 26, make sense, let alone

demonstrate bias.  Plaintiff has not alleged that Dr. Renshaw (or any of the other Individual

Defendants) deprived him of due process during the Grievance Process.[11]

2.   Plaintiff Received Due Process During the Title IX Process.

Plaintiff's arguments about the Title IX process, *see* Opp. at 21-24, are a repeat of the

same conclusory allegations about supposed bias on the part of Dr. Hammat and Mr. Williams

---

[11] Additionally, the Grievance Process occurred because nine members of the program
determined that Plaintiff's continued membership in the program threatened its accreditation.  A
committee made up of Plaintiff's faculty colleagues agreed with that concern and found that
Plaintiff should disassociate or be disassociated.  The Dean of Plaintiff's college concurred.  This
determination is the type of internal academic decision "made by faculty of public educational
institutions" that courts are not well "suited to evaluate."  *Regents of Univ. of Mich. v. Ewing*,
474 U.S. 214, 226 (1985).

and demonstrably incorrect allegations about the process that Plaintiff received.  All of these arguments are addressed in Mason's Motion to Dismiss Count I and Mason's reply brief.  In short: (1) none of Plaintiff's allegations about Dr. Hammat or Mr. Williams plausibly allege that they are biased against Plaintiff or that they have a conflict of interest; (2) Plaintiff's allegations and the documents incorporated (e.g., Mot. Exs. 7-10) demonstrate that Plaintiff received detailed notice of the allegations against him, was made sufficiently aware of the allegations in order to mount a defense, and had multiple opportunities to be heard during which he provided his defenses, *see LMP Holdings, LLC v. PLY Enters. LLC*, No. 12cv440, 2012 U.S. Dist. LEXIS 135551, at *6 (E.D. Va. Sept. 21, 2012) ("Where factual allegations in the complaint are contradicted by such documents, those allegations need not be afforded the presumption of truth normally granted to factual allegation contained within the complaint."); and (3) Plaintiff's disagreement with how Dr. Hammat and Mr. Williams weighed the evidence is not a basis to allege a lack of due process.

As for Dr. Renshaw, Plaintiff has still failed to identify any process that Dr. Renshaw was required to give him prior to deciding on the sanctions to impose.  Plaintiff asserts that he was not provided information about the sanction process or the ability to meet with Dr. Renshaw prior to the imposition of sanctions, but he has pointed to nothing that requires any additional due process prior to a sanctioning decision.

## II.   PLAINTIFF'S FIRST AMENDMENT CLAIM MUST BE DISMISSED.

Plaintiff does not dispute that in order for his statements to be protected they must be "on matters of public concern" and Plaintiff must be speaking "in [his] capacity as [a] private citizen[]," not as an employee.  *Urofsky v. Gilmore*, 216 F.3d 401, 409 (4th Cir. 2000) (en banc).  Plaintiff's claim fails on both requirements.

Plaintiff's argument is that because he was discussing sex, his comments are a matter of public concern. This argument sweeps too far. Some discussions of sex certainly relate to matters of public concern; for example, the plaintiff in *Adams v. Tr. of the Univ. of N.C.*, which Plaintiff cites, wrote opinion columns on "topics such as academic freedom, civil rights, campus culture, sex, feminism, abortion, homosexuality, religion, and morality." 640 F.3d 550, 553, 565 (4th Cir. 2011). That is a far cry from Plaintiff telling stories about his personal sexual experiences and asking a student about her pornography preferences. Plaintiff's sexual escapades in a brothel in Germany, in Vietnam, or at a party in front of other people are not a matter of public concern. Plaintiff also argues that the Individual Defendants "resort to general assertions, without context" and point to "only a few of the statements at issue." Opp. at 28. But Plaintiff's brief does not identify any statement alleged in the complaint that does not relate to his or a student's personal sexual experiences.[12]

Plaintiff's claim also fails because he was speaking as an employee and not as a public citizen. Plaintiff does not deny that he has alleged that all of the statements at issue were made either in a class Plaintiff taught as a Mason faculty member or in conjunction with his research

---

[12] Plaintiff also claims that the Individual Defendants are "dead wrong" for asserting that statements he made in the classroom are "curricular speech" and therefore "*per se*" cannot be a matter of public concern. Opp. at 29. But Plaintiff's only support for this assertion is *Scallet*, which was decided **before** the Fourth Circuit held in *Boring* that curricular speech cannot be a matter of public concern because what is included in the curriculum of a class is "is nothing more than an ordinary employment dispute." *Boring v. Buncombe Cnty. Bd. of Educ.*, 136 F.3d 364, 368 (4th Cir. 1998) (en banc). The Fourth Circuit reaffirmed that holding in *Lee v. York Cnty. Sch. Div.*, 484 F.3d 687, 696-97 (4th Cir. 2007). It is also important to note that Mason's issue with Plaintiff's speech was not the subject matter he was teaching, but rather how he taught it. The issue was Plaintiff's decision to use a personal sexual story as part of his teaching. There is simply no reason why Plaintiff needed to use a personal sexual story in his classroom. To the extent it was necessary to use the example, Plaintiff could have used it without identifying himself as a participant.

conducted as a Mason faculty member.  There is no First Amendment protection for statements made by someone in their role as an employee.  *See Urofsky*, 216 F.3d at 407.  *Urofsky* dealt with speech that faculty members claimed was connected to their research, *see id.* at 405-06, and the Fourth Circuit held that because it was related to their work as university employees, it was not protected speech, *id.* at 409.  Plaintiff's reliance on *Adams* to suggest otherwise is again misplaced.  Again, *Adams* dealt with a faculty member who was publishing opinion columns separate from his work as a faculty member.  The court rejected the university's claim that anything Adams wrote was related to his work because of the "general concept" that professors engage in writing articles as part of their jobs.  640 F.3d at 564.  Here, the university is not trying to sweep in extra-curricular statements Plaintiff made and assert that they were made as part of his job based on "general concepts;" it is Plaintiff who is alleging that the statements were made in the context of his teaching and research.  *See* Compl. ¶ 548.

## III.  THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.

Given Plaintiff's failure to plead a valid due process or First Amendment claim, the Court need not reach the issue of qualified immunity.  However, to the extent that it finds that Plaintiff has plausibly alleged a constitutional violation, the Individual Defendants are entitled to qualified immunity because "[t]he unlawfulness of the official's conduct" was not "apparent in light of pre-existing law."  *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 538 (4th Cir. 2017).

As an initial matter, Plaintiff is wrong to suggest that qualified immunity should not be resolved on a motion to dismiss.  To the contrary, "[b]ecause qualified immunity is an immunity from suit, and not merely a defense to liability, courts must scrutinize and dismiss appropriate cases on qualified immunity grounds early in the litigation.  Indeed, when a district court declines to give a qualified immunity defense a hard look at an early stage in the litigation, either

pursuant to a Rule 12(b)(6) motion to dismiss or a summary judgment motion, it risks the

forfeiture of some of the protections afforded by the defense because the immunity includes an

entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution

of the essentially legal question." *Sigman v. Town of Chapel Hill*, 161 F.3d 782, 786 (4th Cir.

1998) (internal citations and quotation marks omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662,

685 (2009) ("The basic thrust of the qualified-immunity doctrine is to free officials from the

concerns of litigation, including avoidance of disruptive discovery.").  Indeed, qualified

immunity is often granted on a motion to dismiss, including in *Garner*, which Plaintiff

repeatedly cites.  *See* 69 F. Supp. 3d at 592.  The question before the court on qualified immunity

is purely one of law:  taking Plaintiff's well-pled, non-conclusory allegations as true, is there any

controlling law that clearly establishes that the Individual Defendants have violated Plaintiff's

constitutional rights.

Plaintiff has failed to identify any controlling Supreme Court or Fourth Circuit law

demonstrating that the Individual Defendant's actions violated clearly established law.  With

regard to the due process claims, Plaintiff has not identified any clearly established law holding

that Plaintiff had a property interest in mentoring graduate students or in being part of a specific

program within his department.  Nor has he identified any clearly established law holding that

the sanctions imposed on him constitute a demotion or that disclosures to people other than

potential employers can be sufficient to state a liberty interest.  Indeed, the primary district court

case Plaintiff cites to support his property right argument, *Garner*, held that the defendants were

entitled to qualified immunity because there was "much legitimate debate" about whether the

change of position in that case constituted a deprivation of a property interest, especially in light

of *Royster* and *Huang*.  69 F. Supp. 3d at 592.  To the extent that the Court finds that Plaintiff

17

has plausibly pled a property or liberty interest, there is certainly a similar legitimate debate here on that issue.

The Individual Defendants are also entitled to qualified immunity on the due process claim because there is no clearly established law holding that Plaintiff was entitled to the minimum due process of a notice and hearing.  The Supreme Court has explicitly stated:  "we have not had occasion to decide whether the protections of the Due Process Clause extend to discipline of tenured public employees short of termination."  *Gilbert*, 520 U.S. at 929; *see also Myers v. Shaver*, 245 F. Supp. 2d 805, 815 (W.D. Va. 2003) ("[N]either the United States Supreme Court nor the Fourth Circuit has decided whether disciplinary action short of termination entitles an employee to notice and a hearing before the employer acts.").  Even if Plaintiff could overcome this hurdle, he cannot overcome qualified immunity by pointing to the general concept that due process requires a notice and a hearing.  *See Ashcroft v. Al-Kidd*, 563 U.S. 731, 742 (2011).  Instead, he would need to point to clearly established law holding that under the "circumstances at hand," i.e., what he alleges Dr. Hammat, Mr. Williams, or Dr. Renshaw did or did not do, deprived him of due process.  *Campbell v. Galloway*, 483 F.3d 258, 271 (4th Cir. 2007).  Plaintiff has pointed to no Supreme Court or Fourth Circuit case law holding that the specific allegations he makes about the Individual Defendants are sufficient to deprive him of due process.

Finally, on the First Amendment claim, Plaintiff's only response is a footnote where he cites to *Scallet* and *Adams.  Scallet* is a district court case and, therefore, it (as well as all of the other district court cases Plaintiff cites in responding to the due process qualified immunity argument) are irrelevant.  *See Booker*, 855 F.3d at 538 (look to Supreme Court and circuit court cases).  As discussed above, *Adams* is distinguishable from the circumstances here.  Moreover,

given the case law cited above, it is at a minimum debatable whether Plaintiff's speech is

protected by the First Amendment.

## CONCLUSION

After Plaintiff's 162 page complaint and the extensive briefing by both sides, it is

necessary to step back and recognize what this case is actually about.  Plaintiff made some

inappropriate statements of a sexual nature to graduate students.  When they complained, Mason

investigated and found that Plaintiff's repeated sexual statements rose to the level of harassment.

Mason then required sexual harassment training and put in place restrictions on Plaintiff's

engagement with students for four semesters to ensure that the objectionable conduct stopped.

Plaintiff was not suspended, demoted, transferred, deprived of tenure, put on leave, docked pay,

or terminated.  He just cannot do his job the way he wants to do it.

Subsequently, Plaintiff's faculty colleagues in one of the programs within the Psychology

Department decided that they no longer wanted to be associated with him because of concern

about the accreditation of the program.  They used the faculty grievance process provided for in

Mason's Faculty Handbook, and a committee of Plaintiff's faculty peers agreed that he should

disaffiliate or be disaffiliated from the program.  Again, Plaintiff was not suspended, demoted,

transferred, deprived of tenure, put on leave, docked pay, or terminated.  He just cannot be part

of a program within his department.

Plaintiff clearly disagrees with and is upset about the outcome, but that does not give him

a federal constitutional claim.  *See Bishop*, 426 U.S. at 350 ("The Due Process Clause of the

Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions.").

Nor are the federal courts the "appropriate forum" to review internal personnel decisions made

by a university and its faculty.  *Id.*   Counts II, III, and IV must be dismissed with prejudice.

February 5, 2020                     RESPECTFULLY SUBMITTED


                                _____/s/_____
                                Eli S. Schlam, Asst. Atty. Gen.
                                Virginia Bar Number 92987
                                George Mason University
                                4400 University Drive,
                                MS 2A3
                                Fairfax, VA 22030
                                Phone: (703) 993-2619
                                Fax: (703) 993-2340
                                eschlam@gmu.edu

                                *Attorney for Individual Defendants*

20

CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of February, 2020, I will electronically file the

foregoing with the Clerk of the Court using the CM/ECF system, which will then send a

notification of such filing (NEF) to counsel of record in this case.

_____/s/_____

Eli S. Schlam, Asst. Atty. Gen.
Virginia Bar Number 92987
George Mason University
4400 University Drive,
MS 2A3
Fairfax, VA 22030
Phone: (703) 993-2619
Fax: (703) 993-2340
eschlam@gmu.edu