**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 20-1509

TODD KASHDAN, f/k/a/ John Doe,

    Plaintiff – Appellant,

  v.

GEORGE MASON UNIVERSITY; RECTOR AND BOARD OF VISITORS OF GEORGE MASON UNIVERSITY; JENNIFER RENEE HAMMAT, in her official and individual capacity; JULIAN ROBERT WILLIAMS, in his official and individual capacity; KEITH DAVID RENSHAW, in his official and individual capacity; ANN LOUISE ARDIS, in her official and individual capacity; SZUYUNG DAVID DWU, in his official and individual capacity,

    Defendants – Appellees.

-----------------------------------

FOUNDATION FOR INDIVIDUAL RIGHTS IN EDUCATION,

    Amicus Supporting Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Liam O'Grady, Senior District Judge. (1:19-cv-01249-LO-MSN)

Argued: May 4, 2023                                Decided: June 13, 2023

Before NIEMEYER, AGEE, and RUSHING, Circuit Judges.

Affirmed by published opinion. Judge Rushing wrote the opinion, in which Judge Niemeyer and Judge Agee joined.

**ARGUED:** Kara L. Gorycki, NESENOFF & MILTENBERG, LLP, New York, New York, for Appellant. Andrew Nathan Ferguson, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellees. **ON BRIEF:** Andrew T. Miltenberg, NESENOFF & MILTENBERG, LLP, New York, New York, for Appellant. Mark R. Herring, Attorney General, Keonna Carter Austin, Deputy Attorney General, Eli Samuel Schlam, Assistant Attorney General, Toby J. Heytens, Solicitor General, Martine E. Cicconi, Deputy Solicitor General, Michelle S. Kallen, Deputy Solicitor General, Jessica Merry Samuels, Assistant Solicitor General, Kendall T. Burchard, John Marshall Fellow, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellees. Marieke Tuthill Beck-Coon, FOUNDATION FOR INDIVIDUAL RIGHTS IN EDUCATION (FIRE), Philadelphia, Pennsylvania; Earl N. "Trey" Mayfield, III, JURIS DAY, PLLC, Fairfax, Virginia, for Amicus Curiae.

RUSHING, Circuit Judge:

Todd Kashdan, a tenured psychology professor at George Mason University (GMU), appeals the district court's dismissal of his Title IX, procedural due process, and First Amendment claims against GMU, Jennifer Renee Hammat, Julian Robert Williams, Keith David Renshaw, Ann Louise Ardis, and Szuyung David Dwu. Kashdan sued after he was disciplined for creating a hostile educational environment that amounted to sexual harassment. The district court dismissed Kashdan's complaint with prejudice for failure to state a claim, and we now affirm.

## I.

Kashdan has been a psychology professor at GMU for over fifteen years and primarily studies sex, human sexuality, and cultural norms. In December 2018, four current and former female graduate students accused Kashdan of sexually harassing them. In essence, the complainants alleged that during two graduate courses and in interpersonal interactions in his laboratory, at professional conferences, and at student events hosted in his home, Kashdan told them explicit stories about his personal sexual experiences, as well as made explicit remarks and asked intimate questions about their sex lives. One complainant also recounted that Kashdan went to a strip club with her and other graduate students, and another complainant alleged Kashdan hugged her in a manner she believed was inappropriate. From the complainants' perspectives, Kashdan provided educational, research, and other opportunities to graduate students based on favoritism, and having sexually explicit conversations with Kashdan was a prerequisite to getting on his good side. They claimed that Kashdan's conduct made it more difficult to pursue their educations.

GMU investigated the allegations. Investigators interviewed more than twelve witnesses, including Kashdan (who they interviewed three times). For his defense, Kashdan submitted a witness list and more than 150 pages of documentation. Although he admitted many of the factual allegations, Kashdan disputed that his interactions with the complainants amounted to sexual harassment. Rather, he argued he had positive relationships with all four complainants and helped them educationally and in their careers, as reflected in their glowing reviews of his course instruction, the opportunities they received to research and publish with him, and letters of recommendation he wrote on their behalf. He also contended many of the allegations concerned protected academic discourse. Finally, Kashdan theorized that the complainants accused him of sexual harassment because he fired one of them from his lab, and she convinced the others to join her in leveling bad faith accusations against him.

Jennifer Hammat, then GMU's Title IX Coordinator, found that Kashdan sexually harassed all four complainants. Relying on Kashdan's admissions and her own substantiation of other factual allegations, she concluded that Kashdan's repeated sexual conversations and physical interactions with his students were unprofessional and created a hostile environment for students in the classroom, in the laboratory, and at professional conferences.

Kashdan appealed, proffering new evidence and alleging procedural irregularities in the investigation. Julian Williams, then GMU's Vice President for Compliance, Diversity, and Ethics, denied the appeal and upheld Hammat's determinations. Central to Williams's decision was Kashdan's "apparent lack of professional boundaries" with his

graduate students, demonstrated by "numerous instances of non-pedagogical discussions of sex" and "sexual encounters" as well as by Kashdan's creation of "a sexually-charged environment." J.A. 323. Students "felt as though they had to participate" in that environment "in order to remain in [Kashdan's] favor." J.A. 323. In denying Kashdan's appeal, Williams emphasized the "negative effects of hyper-sexual conversations/interactions between a faculty member and graduate students under his supervision and instruction." J.A. 322.

Keith Renshaw, the chair of GMU's psychology department, disciplined Kashdan for his violations of GMU's sexual harassment policy. Most relevant here, Renshaw's sanctions precluded Kashdan from teaching graduate-level courses, mentoring new graduate students, or hiring new graduate students as research assistants, all for a period of roughly two years. Additionally, following a recommendation from a Faculty Grievance Committee and Ann Ardis, the dean over the psychology department, Renshaw required Kashdan to disaffiliate from the department's accredited clinical psychology program for five to six years. The disaffiliation meant Kashdan could no longer teach clinical psychology courses or seminars, hire doctoral students to conduct clinical psychology research with him, serve on clinical psychology student committees (e.g., dissertation committees), or mentor doctoral students in the program. Under the sanctions, Kashdan's salary remained the same, but he became ineligible for certain pay increases.

In September 2019, Kashdan filed the instant lawsuit alleging, among other claims, violations of Title IX, the Fourteenth Amendment's Due Process Clause, and the First Amendment. Defendants moved to dismiss under Federal Rule of Civil Procedure

5

12(b)(6). The district court granted the motions and dismissed Kashdan's complaint with prejudice. This appeal followed.[1]

II.

"We review de novo a district court's dismissal of a complaint pursuant to Rule 12(b)(6)." *Holloway v. Maryland*, 32 F.4th 293, 298 (4th Cir. 2022). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). In evaluating a complaint's sufficiency, we construe the allegations and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). However, we need not accept as true "legal conclusions drawn from the facts" or any other "unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (internal quotation marks omitted). In addition to the complaint, we may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). We may also consider documents "attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

---

[1] We have jurisdiction to hear Kashdan's appeal under 28 U.S.C. § 1291.

A.

We turn first to Kashdan's argument that the district court erroneously dismissed his Title IX claim. Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). The implied right of action by which private plaintiffs may sue to enforce Title IX "extends to employment discrimination." *Preston v. Virginia ex rel. New River Cmty. Coll.*, 31 F.3d 203, 206 (4th Cir. 1994). To state a Title IX employment discrimination claim, a plaintiff must allege facts that, "if true, raise a plausible inference that the university discriminated against [him] on the basis of sex." *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 235 (4th Cir. 2021) (internal quotation marks omitted). Satisfying this standard requires a plaintiff to plausibly allege a but-for "causal link between [his] sex and the university's challenged disciplinary proceeding." *Id.* at 236. Kashdan pleaded his Title IX claim under the so-called "erroneous outcome" and "selective enforcement" theories, which are two accepted ways to plead a Title IX employment discrimination claim. *See id.* at 235 n.6, 236.

The district court correctly dismissed Kashdan's erroneous-outcome claim. Such a claim requires a plaintiff to plausibly allege that "(1) [he] was subjected to 'a procedurally flawed or otherwise flawed proceeding'; (2) which 'led to an adverse and erroneous outcome'; and (3) involved 'particular circumstances' that suggest 'gender bias was a motivating factor behind the erroneous finding.'" *Doe v. Loh*, 767 Fed. App. 489, 491 (4th Cir. 2019) (quoting *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994)). The improper

7

motivating factor must be a but-for cause of the erroneous outcome in the challenged disciplinary proceeding. *See Sheppard*, 993 F.3d at 236–237.

Assuming without deciding that Kashdan plausibly alleged the first two prongs, his claim falters on the third. To allege bias, Kashdan cites prior public statements by Hammat and Williams, as well as pressure from the Department of Education and the general climate at GMU to find sexual harassment accusations substantiated. But the university officials' statements on which Kashdan relies do not plausibly show anti-male bias or demonstrate that anti-male bias was a but-for motivating factor in GMU's disciplinary actions against him. And while pressure from the Department of Education or the general campus climate is relevant, it does not suffice by itself to plausibly allege sex discrimination in a particular instance. *See Doe v. Univ. of Sciences*, 961 F.3d 203, 210 (3d Cir. 2020); *Doe v. Purdue Univ.*, 928 F.3d 652, 669 (7th Cir. 2019); *Doe v. Baum*, 903 F.3d 575, 586 (6th Cir. 2018). Kashdan does not connect these generalized pressures to his case in a way that creates a reasonable inference that anti-male bias motivated GMU's finding that he sexually harassed his students. Thus, as the district court explained, Kashdan "has provided no basis from which to infer the existence of bias in his specific proceeding." J.A. 944.

Kashdan's Title IX claim also fails under a selective-enforcement theory. To state a selective-enforcement claim, a plaintiff must plausibly allege that regardless of his guilt or innocence, his gender was a but-for cause of the severity of the sanctions or of the decision to initiate the challenged disciplinary proceeding in the first place. *See Sheppard*, 993 F.3d at 235 n.6, 236–237; *Yusuf*, 35 F.3d at 715. A plaintiff like Kashdan can do this

by plausibly showing that a similarly situated person of the opposite sex was treated more favorably. *See Sheppard*, 993 F.3d at 235 n.6, 237.

Kashdan's allegations fall short of this standard. Kashdan alleges "upon information and belief" that GMU does not formally investigate female professors accused of sexual- or gender-based harassment at the same frequency as males, and that when GMU does find female professors in violation of its policies, it sanctions them less severely. Although a plaintiff may initially plead parts of his case "upon information and belief," his allegations may not be wholly conclusory. *See Sheppard*, 993 F.3d at 234 ("[S]imply reciting the cause of actions' elements and supporting them by conclusory statements does not meet the required standard." (internal quotation marks omitted)). Kashdan's allegations on this score are far too speculative, and as the district court reasoned, Kashdan's complaint "is devoid of facts supporting the allegations that were pleaded upon information and belief." J.A. 947. In other words, Kashdan's "allegations of selective enforcement are not supported by any well-pled facts that exist independent of his legal conclusions." J.A. 947. Accordingly, we affirm the district court's dismissal of Kashdan's Title IX claim.[2]

B.

We next turn to Kashdan's procedural due process claim. Under the Fourteenth Amendment, an individual has "the right to due process where [his] good name, reputation,

---

[2] In his complaint, Kashdan also alleges that GMU engaged in selective enforcement by investigating him while ignoring his claim that one of the complainants brought her accusations against him in bad faith. At oral argument, however, Kashdan conceded that this complainant is not a proper comparator. Oral Arg. at 14:48–15:10.

honor, or integrity is at stake because of what the government is doing to him." *Sciolino v. City of Newport News*, 480 F.3d 642, 646 (4th Cir. 2007) (internal quotation marks and brackets omitted). To state this type of claim, a plaintiff must plausibly "allege that the charges against him: (1) placed a stigma on his reputation; (2) were made public by the employer; (3) were made in conjunction with his termination or demotion; and (4) were false." *Id.*; *see Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 172 n.5 (4th Cir. 1988). Where, as here, the claim rests on a demotion, the demotion must be "significant." *Stone*, 855 F.2d at 172 n.5. A "significant demotion" is "a job far beneath the one [the plaintiff] had, where being so demoted is to be as effectively excluded from one's trade or calling as by being thrown out on the street." *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 311 (4th Cir. 2006) (internal quotation marks omitted).

Kashdan alleges that the sanctions GMU imposed were a significant demotion tantamount to dismissal. We disagree. Before the disciplinary sanctions, Kashdan was a tenured professor in GMU's psychology department. He remained so afterward. Although Kashdan was forced to disaffiliate from the clinical psychology program, he continued to be a member of the psychology department and was allowed to teach general psychology courses. Moreover, the disciplinary sanctions did not prevent Kashdan from writing and publishing in the field of clinical psychology, attending clinical psychology conferences, collaborating with other professors in the clinical psychology field, or from consulting or engaging in other clinical psychology work. Finally, although Renshaw imposed the sanctions for a period of years, they are not permanent. Accordingly, the sanctions do not

effectively exclude Kashdan from his trade or calling and are not a significant demotion. We therefore affirm the dismissal of Kashdan's procedural due process claim.

C.

Finally, we address Kashdan's First Amendment claim. In the public-university context, we apply the *Pickering-Connick*[3] framework to determine whether an employee was wrongly sanctioned for protected speech. *See Adams v. Trs. of Univ. of N.C.-Wilmington*, 640 F.3d 550, 560–561, 564 (4th Cir. 2011). Under that framework, we examine "(1) whether the public employee was speaking as a citizen upon a matter of public concern or as an employee about a matter of personal interest; (2) whether the employee's interest in speaking upon the matter of public concern outweighed the government's interest in providing effective and efficient services to the public; and (3) whether the employee's speech was a substantial factor in the employee's adverse employment decision." *Id.* at 560–561 (quoting *McVey v. Stacy*, 157 F.3d 271, 277–278 (4th Cir. 1998)) (brackets omitted).

The district court dismissed Kashdan's claim on the first prong. "To determine whether speech involves a matter of public concern, we examine the content, context, and form of the speech at issue in light of the entire record." *Urofsky v. Gilmore*, 216 F.3d 401, 406 (4th Cir. 2000) (en banc); *see Adams*, 640 F.3d at 564. Speech is of public concern if "it involves an issue of social, political or other interest to a community." *Urofsky*, 216 F.3d at 406–407; *see Adams*, 640 F.3d at 564. In short, we ask "whether the public or the

---

[3] *Connick v. Myers*, 461 U.S. 138 (1983); *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968).

11

community is likely to be truly concerned with or interested in the particular expression." *Arvinger v. Mayor & City Council of Baltimore*, 862 F.2d 75, 79 (4th Cir. 1988) (internal quotation marks omitted).

GMU disciplined Kashdan for speech that concerned topics of purely personal interest. Specifically, Kashdan's comments were about his personal sex life and the sex lives of his students. Besides two personal stories Kashdan used as examples in class, GMU sanctioned him for speech outside of his curricula, formal scholarship, other published work, or public discourse. Indeed, his sanctioned speech primarily involved casual, interpersonal interactions with students about personal sexual matters that Kashdan does not plausibly connect to a larger public discourse or matter of public concern. Kashdan's employment at GMU and his role as his students' teacher, mentor, and supervisor enabled and facilitated these interactions.

Although Kashdan relies heavily on the fact that his teaching and research focused on sex and sexuality, the district court aptly reasoned that "one's position as a professor of sexual taboos does not confer carte blanche and render all speech protected." J.A. 961. While Kashdan's research, publishing, and teaching about sex may qualify as matters of public concern, *see Adams*, 640 F.3d at 565, his contested speech veered well outside his teaching and scholarship into areas of private, personal interest. It is simply implausible that the public is "truly concerned with or interested in" Kashdan's personal sexual exploits or the intimate and private details of his students' sex lives. *Arvinger*, 862 F.2d at 79 (internal quotation marks omitted).

"[I]n the absence of unusual circumstances, a public employee's speech upon matters only of personal interest is not afforded constitutional protection." *Grutzmacher v. Howard County*, 851 F.3d 332, 343 (4th Cir. 2017) (internal quotation marks omitted). Because Kashdan's speech falls squarely within this category, the district court did not err by dismissing his First Amendment claim.

III.

For these reasons, the judgment of the district court is

*AFFIRMED*.